Kenneth SARSHA, Plaintiff–Appellant,

v.

SEARS, ROEBUCK & COMPANY,
Defendant–Appellee.

No. 92–3260.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1993.

Decided Aug. 20, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 18, 1993.

John A. Dienner, II (argued), Matthias A. Lydon, Lydon & Griffin, Chicago, IL, Lawrence Petroshius, Petroshius & Petroshius, Waukegan, IL, for plaintiff-appellant Kenneth Sarsha.

Jeffrey S. Goldman, Allison Blakley (argued), Paul A. Olsen, Fox & Grove, Chicago, IL, for defendant-appellee Sears, Roebuck & Co.

Before FLAUM and KANNE, Circuit Judges, and REAVLEY, Senior Circuit Judge.*

KANNE, Circuit Judge.

Kenneth Sarsha sued Sears, Roebuck & Company, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court granted the defendant's motion for summary judgment on both claims. We affirm in part and reverse in part.

## I.

In December 1987, Gary Taylor, manager of the Sears retail store in Springfield, Illinois, determined that Sarsha, the store's operating manager and second-in-command, was dating a subordinate by the name of Rebecca Schaertl. The next month, after consulting the company's regional office in St. Louis, Taylor fired Sarsha for alleged "willful misconduct," specifically, dating Schaertl after being warned by his supervisors not to date co-workers. Sarsha sued, charging age and gender discrimination. He claimed that Sears had no policy or long standing practice preventing managers from

---

* The Honorable Thomas M. Reavley, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

dating subordinates, and protested that he was never warned, on threat of his job, to refrain from dating a co-worker. According to Sarsha, he was discharged because of his age (46) and because he was a male; Sears did not discharge his inamorata.

The district court disagreed, and concluded that Sarsha had failed to state a viable claim under either the ADEA or Title VII. *Sarsha v. Sears, Roebuck & Co.*, 796 F.Supp. 1132 (N.D.Ill.1992). With respect to the age discrimination claim, the court held that Sears had articulated a non-discriminatory reason for discharging Sarsha, and that Sarsha had failed either to demonstrate that the asserted reason was pretextual or to produce direct evidence of discriminatory intent. On the gender discrimination claim, the court held that Sarsha had failed to establish a prima facie case because he failed to show that, under the circumstances, his employer had treated him differently from a similarly situated female. Sarsha appealed; we have jurisdiction pursuant to Title 28 U.S.C. § 1291.

## II.

■ We review de novo a district court's grant of summary judgment, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir.1992); *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 400 (7th Cir.1992). Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–71 (7th Cir. 1992); *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989). Accordingly, we will af-

firm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict. *Billish v. City of Chicago*, 989 F.2d 890, 892 (7th Cir.1993), *petition for cert. filed*, June 28, 1993. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Karazanos v. Navistar International Transportation Corp.*, 948 F.2d 332, 335 (7th Cir.1991).

■ To prevail on an ADEA claim, Sarsha must ultimately prove that he was discharged because of his age. *Anderson*, 965 F.2d at 400. He does not need to prove that Sears was motivated by age alone; "it is enough that age was a 'determining factor' or a 'but for' element in the employer's decision." *Id.* *See also Fisher*, 979 F.2d at 1243; *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). To prove his claim, Sarsha may follow either of two evidentiary paths. First, he may try to meet his burden head on by presenting direct or circumstantial evidence that age was a dispositive factor in his discharge. *King v. General Electric Co.*, 960 F.2d 617, 621 (7th Cir.1992). The district court held that Sarsha had failed to show direct evidence of age discrimination.[1] We agree. The evidence Sarsha puts forth to show Sears's discriminatory animus is exiguous, and he has made no attempt to show a nexus between this evidence and Sears's decision to fire him. *See Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1266 (7th Cir.1993) (alleged discriminatory remarks, when unrelated to the employment decision in question, are not evidence that employer relied on illegitimate criteria); *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989) (same).

■ Sarsha can also attempt to prove his case using the indirect, burden shifting method of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also*

---

1. This evidence consisted of certain remarks made by Taylor. According to Sarsha, Taylor harassed him about wearing sports coats, and suggested that Sarsha should dress like Taylor, who was younger. In addition, Taylor allegedly told Sarsha that he drove "an old man's car" and "should have shorter hair." We do not believe there is a presumption that long hair is an indicia of advancing age.

*Weihaupt v. American Medical Association,* 874 F.2d 419, 424 (7th Cir.1989); *Oxman v. WLS–TV,* 846 F.2d 448, 452–53 (7th Cir. 1988). This method places the initial burden on the plaintiff to prove a prima facie case of age discrimination. Thus, Sarsha must demonstrate that (1) he was a member of the protected class (persons over 40), (2) he was performing his job well enough to meet his employer's legitimate expectations, (3) he was discharged, and (4) the employer sought a replacement for him. *Anderson,* 965 F.2d at 400; *McCoy,* 957 F.2d at 371.

■■■ If Sarsha clears this hurdle, a presumption of discrimination arises and the burden of production shifts to Sears to articulate a legitimate, nondiscriminatory reason for Sarsha's discharge. If Sears does so, the presumption dissolves and the burden of production shifts back to Sarsha to show, by a preponderance of the evidence, that the proffered reason is pretextual. *Fisher,* 979 F.2d at 1243. Pretext may be established directly with evidence that Sears was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible. *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 502 (7th Cir. 1992); *Anderson,* 965 F.2d at 400; *McCoy,* 957 F.2d at 372. Under the indirect method of proof, only the burden of production shifts from one party to the other; the ultimate burden of proving intentional discrimination remains with Sarsha. *Hong,* 993 F.2d at 1261; *Anderson,* 965 F.2d at 400.

■■■ The district court found, and the parties agree, that Sarsha established a prima facie case of age discrimination. He is over forty years old, performed well at his job, and was fired and replaced by a younger person (age 38). Sears claims it fired Sarsha because he violated the company's no-dating policy and failed to heed warnings not to date a subordinate.[2] Either is a legitimate nondiscriminatory reason for terminating an employee. The question, therefore, is whether Sarsha has created a genuine issue concerning the sincerity of the proffered reasons for his discharge. *See Colosi,* 965 F.2d at 502.

■■■ The following is supported by the record in this case. Taylor believed Sarsha's relationship with Schaertl compromised his effectiveness as a manager and exposed Sears to potential liability in the form of a sexual harassment suit. He claims he informed Sarsha that Sears's policy prohibits relationships between staff members and employees of the opposite sex, and instructed him to refrain from such relationships. Because Sarsha refused to comply, Taylor contacted Stephen Allen, the company's regional director in St. Louis. Allen considered four pieces of evidence that, according to Sears, demonstrate Sarsha's history of improper relationships with co-workers. First, two unsigned letters, purportedly written by employees at the Springfield store, complaining about a 1986 affair Sarsha had with a Sears security officer. Second, a July 15, 1986 file memo written by Allen Zimmerman, the former regional personnel manager, concerning a meeting he had with Sarsha in response to the two letters. The memo states, in part:

I told Ken that Sears would not tolerate any relationship between management and a subordinate. I asked Ken if he knew Sears['s] long standing practice that Sears management should not be involved with employees. Ken acknowledged! I told Ken that if any current or future relationships exists [sic] or will exists [sic] in the future he would be terminated. Ken stated he understood! And would discontinue any personal relationships. Again, I informed Ken that actions such as mentioned in the letter would be grounds for termination—he understood.

Third, Allen considered a January 4, 1988 letter written by Taylor to Zimmerman, describing two instances in which Taylor informed Sarsha that Sears's policy forbids relationships with other employees. Finally, Allen considered a December 31, 1987 sur-

---

2. The record, including Sears's Statement of Material Facts appended to its Memorandum in Support of Motion for Summary Judgment, refers both to an alleged no-dating policy and to instances where Sarsha was allegedly warned not to date co-workers. Evidence of a policy is not coterminous with evidence of warnings (which may exist exclusive of any policy); either would provide an independent, nondiscriminatory reason for discharging Sarsha. For this reason, we will analyze these two types of evidence separately.

veillance report by John Sullins, regional loss prevention manager and part-time sleuth. The report disclosed that on December 30 Schaertl spent the evening with Sarsha at his home.

After reviewing these documents, Allen consulted with Taylor and David Rich, the current regional personnel manager. They concluded that Sarsha's relationship with Schaertl compromised his effectiveness as a manager and amounted to insubordination in light of Taylor's and Zimmerman's alleged previous warnings. Taylor subsequently fired Sarsha in accordance with instructions from Rich.

Sarsha, for his part, admits to the affair with Schaertl, but contends that the true reason for his termination lies elsewhere. In attacking Sears's reason for terminating him, Sarsha argues that the company had no policy prohibiting employees from dating. Indeed, the deposition testimony of Allen, Taylor, Zimmerman, and Gordon Fifer, the Springfield store's manager from 1977–87, demonstrates that Sears does not have any written policy. Sarsha also claims the company did not have an informal policy. Fifer testified during his deposition that, during the time he was the manager of the Springfield store, he never heard of a policy pertaining to dating. In an affidavit attached to his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Sarsha claims he met his second wife while they were both employed at the Springfield store and dated her openly. Indeed, Sears threw a party for the couple prior to their marriage.

■ Based on the record, we believe that a material issue of fact exists as to whether or not Sears has a policy against employee dating. Allen, the company's regional director, testified in his deposition that Sears's policy would permit Sarsha to have a nonsexual social relationship with a co-worker depending on "the general perception of inappropriate activity or conduct in that particular case." Zimmerman's testimony suggests the policy would allow employees to become more involved (go out on dates and perhaps engage in sexual foreplay), up to the point they were informed it was creating a prob-

lem at work. We cannot say, based on the statements of Sears's local and regional management, that the company's decision to terminate Sarsha was rooted in a coherent formal or informal policy, or even a "long standing practice," of prohibiting dating between managers and subordinates. When the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharging Sarsha.

■ This does not end the matter, however, for Sears may still discharge Sarsha if, as the district court found, the record shows that he "was repeatedly taken aside and warned of the disruptive aspects of his behavior." Sarsha admits that he openly dated a Sears security guard in 1986; his boss, Fifer, knew of the relationship but apparently did not object.

In his affidavit, Sarsha states that he met with Zimmerman to discuss two anonymous letters Zimmerman had received pertaining to this affair. According to Sarsha, Zimmerman told him that he should "remove the perception of favoritism" toward the security guard. Sarsha responded that he had done nothing to create such an impression, but nonetheless would stop dating the woman. Zimmerman stated that would end the matter. Sarsha denies Zimmerman told him that dating violated company policy, that he was prohibited from dating other employees, or that dating could result in dismissal. Zimmerman never wrote Sarsha about their discussion, and did not send him a copy of the July 1988 file memo he prepared. In a January 25, 1988 letter to David Rich, Taylor described the meeting at which he informed Sarsha of his termination. In the letter, Taylor writes, "I then reminded Ken that he had been warned not to date store employees on several occasions, once by Al Zimmerman and twice by myself. Ken insisted that Mr. Zimmerman did not actually tell him not to date employees, only to remove the perception."

Taylor's January 1988 letter to Zimmerman relates that Taylor had previously "counselled Ken against any relationships with female employees" and "again counselled him that Sears policy prohibits rela-

tionships between staff members and employees of the opposite sex." Taylor's letter to Rich later that month states, "I reminded [Sarsha] that I had told him not to compromise his position by dating employees. He agreed that I did tell him this." Sarsha disputes these characterizations of his discussions with Taylor. According to Sarsha's deposition testimony, Taylor told him in October 1987 that he thought dating a co-worker was "not a good practice." Later, Taylor mentioned to Sarsha that he did not approve of two retired Sears managers who were rumored to have dated subordinates. Sarsha specifically denies that Taylor ever told him the company had a policy against dating or that he could be discharged for dating a subordinate.

Sears argues in its Memorandum in Support of Motion for Summary Judgment that "Taylor informed Sarsha that dating of subordinates was absolutely prohibited," but points to nothing in the record to support this assertion other than Taylor's January 1988 letter to Zimmerman. In the letter, Taylor identified company policy as the source of his warnings; he did not mention Sarsha's performance on the job. As we noted, the existence of a no-dating policy is a disputed issue of fact in this case. In the absence of such a policy, Sears has articulated no basis for terminating Sarsha other than his alleged failure to heed his superiors' admonitions. Yet Sarsha disclaims that he was told he could not date a co-worker, or that his relationship with Schaertl was a problem and must end lest he be fired.

■ Stripped down, this is a case of one party's word against the other. It is clear that whether or not Sarsha disregarded instructions to break off his relationship with Schaertl or was "repeatedly taken aside and warned of the disruptive aspects of his behavior" depends, in turn, on whether or not the testimony of Taylor and Zimmerman should be credited over that of Sarsha. Taylor and Zimmerman insist Sarsha was warned to stop dating or be fired, and that he disobeyed; Sarsha responds that he received no such warning and thus did not disobey. We cannot resolve the conflict between these two positions without deciding which side to believe. On summary judgment, a court can neither make a credibility

determination nor choose between competing inferences. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Wilson v. Williams*, 997 F.2d 348, 350–51 (7th Cir.1993); *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 575 (7th Cir.1987); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir.1987). Rather, these are functions for a jury.

■ Where the party opposing a motion for summary judgment bears the burden of proof on an issue, he may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party's own affidavit or deposition will constitute affirmative evidence to defeat a summary judgment motion, *Wilson*, 997 F.2d at 351; *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992), even if it includes only bare denials. *Scherer v. Rockwell International Corp.*, 975 F.2d 356, 360 (7th Cir.1992) (citing *Gatlin v. Jewel Food Stores*, 699 F.Supp. 1266, 1268 (N.D.Ill.1988)).

■ We think that Sarsha has satisfied his evidentiary task. His affidavit does not rehash the facts alleged in his complaint. Compare *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1265 (7th Cir.1990) (plaintiffs' affidavits "simply reiterate[d] the allegations of the original complaints without providing any factual support"), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Rather, it describes three conversations with two supervisors over a period of roughly a year and a half. Dating was discussed during these conversations, but Sarsha contends he was never told it was a prohibited activity or he could lose his job. *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir.1988) (in ADEA case, issue of fact raised by affidavits of employee and his supervisors where "renditions of their conversations and meetings with each other differ[ed] diametrically and very specifically").

■ The material issue in dispute, of course, is whether Zimmerman and Taylor intended in their conversations with Sarsha to bring home the point that, after the security guard, further dating would result in dismissal. The cold record does not provide the

answer either way, and any doubts we have must be resolved in Sarsha's favor. *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir.1990). We are mindful that summary judgment is particularly inappropriate for settling issues of intent or motivation, *see Connor v. Reinhard*, 847 F.2d 384, 393–94, 396–97 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th Cir.1980) (per curiam), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), especially where, as here, the claim is brought under a statute that allows for trial by jury. *See Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir. 1991) (en banc).

Taking Sarsha's allegations as true, we conclude a material issue of fact exists concerning whether or not he was warned that dating in general, or his relationship with Schaertl in particular, would result in dismissal. The evidence presented by Sears in support of its motion for summary judgment conflicts with Sarsha's version of events, and the result is a genuine dispute in this case. Disposition of the ADEA claim by summary judgment was inappropriate. *See Adickes v. S.H. Kress and Company*, 398 U.S. 144, 157–60, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); *Spreen v. Brey*, 961 F.2d 109, 111–12 (7th Cir.1992).[3]

### III.

■ Sarsha also contends that Sears discriminated against him on the basis of his sex. The crux of his complaint is that he, but not Schaertl, was fired. According to Sarsha, if Sears had a policy forbidding a supervisor from dating a subordinate, *ipso facto* the policy must also forbid a subordinate from dating a supervisor. Thus, the failure to discipline or discharge Schaertl is proof of unequal treatment based on sex.

We need not tarry over this claim. Sears is entitled to enforce a no-dating policy (if one exists) against supervisors, who by virtue of their managerial positions are expected to know better, rather than subordinates. This court does not sit to review a company's business judgments; unless Sarsha's gender

mattered to Sears—that is, unless, under the circumstances, he would have been kept on in a management position if he were a woman— he is not entitled to relief under Title VII. *See Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 560–61 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■ To make out a prima facie case of sex discrimination under Title VII, Sarsha must show that he was treated differently from a similarly situated female at Sears—a manager who defied either an asserted policy against dating or the commands of her supervisors not to date a co-worker. *See Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 338 (7th Cir.1993) (plaintiff "cannot establish a prima facie case of salary discrimination [under Title VII] without evidence that similarly-situated males were paid more"); *Wislock–Goin v. Mears*, 831 F.2d 1374, 1379–80 (7th Cir.1987) (plaintiff failed to establish a prima facie case of either disparate treatment or disparate impact under Title VII because she did not demonstrate that similarly-situated male employees were treated differently), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 274 (1988). *Cf. Timms v. Frank*, 953 F.2d 281, 286 (7th Cir.) ("To make out a prima facie case [of race discrimination] under Title VII, the plaintiff must show that she is a member of a protected class who was qualified for reinstatement [to her position] but was denied, while a similarly situated employee outside of her protected class, and with a similar work history, was reinstated."), *cert. denied*, ─── U.S. ───, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992); *Morgan v. Harris Trust and Savings Bank of Chicago*, 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam) ("For any Title VII case alleging racially motivated termination, plaintiff must show he or she was treated less favorably than similarly situated employees and that defendant's intent was discriminatory").

Sarsha does not allege that he has been treated differently from a similarly situated female. Moreover, he was presented no direct evidence that gender was a motivating factor in Sears's decision to fire him. His

---

**3.** Of course, our decision to reverse the district court's grant of summary judgment does not preclude that court from issuing a directed ver-

dict if it is later deemed appropriate. *Bienkowski*, 851 F.2d at 1508.

claim of gender discrimination must therefore fail.

## IV.

It is undisputed that Sarsha dated at least two co-workers while he was employed by Sears. We conclude, however, that genuine issues of fact exist concerning whether or not (i) Sears had a no-dating policy that Sarsha violated, and (ii) Sarsha was instructed not to date co-workers by his superiors. Accordingly, the district court's decision to grant Sears's motion for summary judgment on Sarsha's ADEA claim is REVERSED and the case REMANDED for proceedings consistent with this opinion. We agree with the district court that Sarsha failed to make out a prima facie case of gender discrimination under Title VII; that decision is

AFFIRMED.