33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles L. KRIEG, Plaintiff-Appellant,
v.
KIMBALL INTERNATIONAL INCORPORATED, Defendant-Appellee.
 No. 94-1069.
 United States Court of Appeals, Seventh Circuit.
 Argued May 16, 1994.
Decided Aug. 23, 1994.
 
 Before CUMMINGS, HILL* and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 The plaintiff-appellant, Charles Larry Krieg, was terminated from his employment at Kimball International ("Kimball") on September 12, 1991. Thereafter, he filed this lawsuit alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 et seq. The complaint also alleged various state law claims which are not raised on appeal. The district court granted summary judgment in favor of the defendant on the ADEA claim and dismissed the state law claims without prejudice. The plaintiff appeals and we affirm.
 
 I. BACKGROUND
 
 2
 Kimball International which is well-known as a producer of pianos and organs also manufactures and distributes office furniture. The plaintiff, Charles Krieg, an at-will employee, was a credit manager in the office furniture division from 1981 until his discharge in September of 1991. At the time his employment was terminated he was fifty-five years of age and had been working as one of Kimball's credit managers since March of 1981.
 
 
 3
 The office furniture division's credit department contained five credit managers at the time of Krieg's discharge and the plaintiff was second in seniority and among the most highly compensated. In September of 1990, Krieg's supervisor asked him to consider a one-year assignment as the credit department's representative on a company-wide business area analysis team ("the BAA team"). The function of the BAA team was to design a new management system for the company. At the time Krieg accepted the assignment, he claims that his supervisors, David Scheu and Helen Kendall, assured him he could return to his position as a credit manager when his assignment on the BAA team was completed.
 
 
 4
 In order to replace Krieg in the credit department while he was serving on the BAA team,[1] Scheu hired a new credit manager, Luke Oeding, who was about thirty years younger than Krieg. Thus, the credit department maintained its normal complement of four credit managers.
 
 
 5
 In early 1991, Kimball began to experience a downturn in sales and profits. In order to maintain profitability, the company embarked on a cost containment program although there was no written policy for the department supervisors to follow. Several departments made personnel cuts, eliminating some thirty-five employees in the office furniture division. In May of 1991, the plaintiff, Charles Krieg, requested that he be reassigned to the credit department as he had completed his responsibilities on the BAA team. He recommenced his duties as a credit manager on June 1, 1991 and continued in that capacity until the date of his termination, September 12, 1991.
 
 
 6
 By late August 1991, the financial condition of the office furniture division was still declining and David Scheu determined that since other department heads had reduced their workforces that he, too, would have to get by with a smaller number of employees in the credit department. Thus, Scheu decided to eliminate one of the five credit managers. He testified in his deposition that he explained his decision to Helen Kendall, the administrative manager of the credit department, and they agreed that after ranking the five credit managers based on their communication and responsiveness to Kimball employees in other departments, their handling of outstanding balances, their use of the computerized system to record debt collection measures, their timely analysis of financial reports and approaching the job with a sense of urgency, Krieg was at the bottom of the five. In the summary judgment proceeding, Kimball supported the determination that Krieg was the least effective credit manager with the deposition testimony of Scheu, Kendall and credit managers Dean Baumeyer and Roger Niehaus who testified that "Krieg was the least productive employee in the credit department" and that he failed to use the computer system which made it difficult for other credit managers to follow up on his work.
 
 
 7
 Krieg was informed on September 12, 1991 that he was the one who would be laid off. He received ten weeks of severance pay at the time of his discharge. The following day he called his supervisor David Scheu and requested a letter of recommendation to facilitate his job search. Scheu complied and provided Krieg with the following letter:
 
 TO WHOM IT MAY CONCERN:
 
 8
 Larry Krieg has been an employee of Kimball for the last ten years. During that time I had been either associated with Larry in the Financial services area, or supervised Larry directly.
 
 
 9
 Larry has been a loyal, dedicated employee for those ten years and an asset to the company. He has always been customer-focused and easy to deal with. He possesses very good written and oral communication skills, as well as very good analytical capabilities. Larry certainly understands credit and collections techniques and has performed well in a very tough region, the northeast section of the United States. Larry possesses a very good understanding of accounting and financial management.
 
 
 10
 If it had not been for a downturn in the economic environment, particularly in the office furniture industry, and the overall financial impact on Kimball International, Larry Krieg would still be a very good employee of Kimball International.
 
 
 11
 I would highly recommend him for a position, specifically in the financial arena.
 
 
 12
 Sincerely,
 
 FINANCIAL SERVICES DIVISION
 David J. Scheu, Vice President
 II. ISSUES
 
 13
 Krieg raises the following issues on appeal: (1) whether the trial court erred in determining that the defendant stated a valid nonpretextual reason for discharging Krieg and (2) whether the court erred in finding that Krieg failed to present direct evidence of age discrimination.
 
 III. DISCUSSION
 A. Standard of Review
 
 14
 This court reviews a grant of summary judgment de novo. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We examine the factual record in the light most favorable to the nonmoving party, the plaintiff-appellant Krieg. Id. As we stated in Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993),
 
 
 15
 Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict.
 
 
 16
 Id. (quoted in Robinson v. PPG Industries, Inc., No. 92-3000 (7th Cir. May 4, 1994).
 
 
 17
 In order to prevail in an age discrimination lawsuit the plaintiff must establish disparate treatment on the basis of age. A plaintiff may either introduce direct evidence of discrimination or employ the McDonnell Douglas shifting burdens analysis to establish that age was the reason for the discharge. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1993) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).
 
 
 18
 Under the shifting burdens analysis,
 
 
 19
 "the plaintiff must initially establish a prima facie case of discrimination. In order to establish a prima facie case, the plaintiff must show: (1) [he] was a member of the protected class (age 40 or over), (2) [he] was doing the job well enough to meet [his] employer's legitimate expectations, (3) [he] was discharged or demoted, and (4) the employer sought a replacement for [him]....
 
 
 20
 If the plaintiff succeeds in establishing a prima facie case, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for age discrimination.
 
 
 21
 Anderson, 13 F.3d at 1122. In Anderson, this court went on to clarify that "[i]f the employer offers a pretext--a phoney reason--for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age." Id. (quoting Visser v. Packer Engineering Assoc., Inc., 924 F.2d 655, 657 (7th Cir.1991) (en banc)). Anderson further explained that this approach has received approval of the U.S. Supreme Court in St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993).
 
 B. Direct Evidence of Age Discrimination
 
 22
 In defending against Kimball's motion for summary judgment in the district court, and on appeal, the plaintiff argues that there is direct evidence of age discrimination. The only evidence the plaintiff identifies is the fact that he was some thirty years older than the credit manager who replaced him, Luke Oeding.[2] Secondly, the plaintiff claims that certain age related comments made by his peers (other credit managers) and his supervisors (David Scheu and Helen Kendall) establish that the real reason for his discharge was age. The district court found
 
 
 23
 "that neither of these two factors (his noticeable age or the language used by his supervisors) are direct evidence of age discrimination. Even if these two assertions could be considered as direct evidence, this Court believes that no reasonable jury could conclude that age discrimination occurred here based on these two pieces of evidence alone."
 
 
 24
 This court held in Visser that simply because an older employer was replaced by a younger employee is not direct evidence of age discrimination. Visser, 924 F.2d at 658-59 (neither "[the plaintiff's] age" nor "the fact that he was replaced by a much younger man" "is evidence of age discrimination").[3] Visser held that the plaintiff's age and the age of his/her replacement "merely place [the plaintiff] within the protected class and establish injury." Id. In the case before us, the trial court, relying on Visser, ruled that merely because Krieg was replaced by a younger credit manager was "not, in and of itself, evidence of age discrimination." We agree with the trial court's interpretation of Visser and hold that the fact that Krieg was significantly older than Luke Oeding is not direct evidence of age discrimination.
 
 
 25
 Secondly, Krieg argues that certain "code words" that were used by employees in the credit department establish that age was the true reason for his termination. He refers to the fact that one of the credit managers (Roger Niehaus) called him "the old man in the department" and also said he was not a "young pup" anymore. The statements of Niehaus cannot be used to impute a discriminatory motive to Kimball in discharging Krieg because Niehaus played no role in the employment decision. Niehaus was a peer to Krieg, not a supervisor. See Aungst v. Westinghouse Elec. Corp., 937 F.2d 1216, 1221 (7th Cir.1991) ("[s]tatements made by inferior employees are not probative of an intent to discriminate by the decisionmaker); see also Fortino v. Quasar Co., 950 F.2d 389, 395 (7th Cir.1991) (" '[a]ctions and comments by employees not involved in a discharge decision cannot provide a basis for charging other employees with discrimination' ") (quoting Jardien v. Winston Network, Inc., 888 F.2d 1151, 1155 (7th Cir.1989)).
 
 
 26
 Additionally, Krieg argues that when his supervisors (David Scheu and Helen Kendall) described his work they said he "lacked a sense of urgency" while Luke Oeding (the younger credit manager) was "enthusiastic." Krieg claims that these comments were code words used to disguise a discriminatory intent and cites McNeil v. Economics Laboratory, Inc., 800 F.2d 111, 115-16 (7th Cir.1986), cert. denied, 481 U.S. 1041 (1987), for support. In McNeil, this court upheld a trial judge's finding the plaintiff had established a prima facie case of discrimination by introducing evidence that his supervisor, who discharged him, said that he wanted to get rid of the "old salesmen" and replace them with "bright young people." The supervisor also made reference to "over-paid and under-motivated veterans."
 
 
 27
 In the instant case, the statement by Krieg's supervisor describing him as "lacking a sense of urgency" falls far short of establishing evidence of a discriminatory intent on the part of Kimball. "Lacking a sense of urgency" might very well describe a young employee as an older employee. In contrast, the comments in McNeil that the supervisor wanted to replace "old salesmen" with "bright young people" and the reference to "over-paid and under-motivated veterans" directly relate to age. Thus, we agree with the district court and hold that plaintiff's reliance on the statement that he "lacked a sense of urgency" fails to establish direct evidence of age discrimination.
 
 C. Burden-Shifting Analysis
 
 28
 The defendant conceded for purposes of summary judgment that the plaintiff had set forth his prima facie case of age discrimination. Thus, the issue before the district court on summary judgment, and before us on appeal, is whether the defendant overcame the presumption of age discrimination by setting forth a legitimate, nonpretextual reason for discharging the plaintiff.
 
 
 29
 The defendant's nondiscriminatory reason for terminating Krieg was that the company was experiencing an economic downturn and thus had to undergo a reduction in workforce. Other departments within the furniture division had already laid off employees and David Scheu, the Vice President in charge of the credit division, determined that in order to contain costs he would have to reduce the credit department from five managers to four. Based on this need to reduce the workforce, Scheu informed Helen Kendall, the immediate supervisor over the credit managers, of his decision and together, they agreed that Krieg was the lowest ranked based on communication and responsiveness to employees in other departments, collection of outstanding balances, using the computer system to keep track of collection efforts, and promptness in responding to financial reports. They believed that Krieg lacked a sense of urgency in the accomplishment of his various employment tasks.
 
 
 30
 The defendants have sought to emphasize throughout this proceeding that the plaintiff was not terminated because he was failing to perform his job, rather, he was discharged as part of a reduction in the workforce. But for the economic downturn, Krieg would still be employed at Kimball. The situation before us is quite similar to that in Gustovich v. AT & T Communications, Inc., 972 F.2d 845 (7th Cir.1992), which also involved the discharge of employees (including some older ones) as part of a reduction in the workforce. In Gustovich we held that "[t]he question is not whether the ratings were right but whether the employer's description of its reasons is honest." Thus, we must examine the evidence presented to the district court to determine whether Krieg was in fact discharged as part of a reduction in the workforce and whether the reasons for ranking Krieg the lowest of the five credit managers was honest.
 
 
 31
 The plaintiff set forth several arguments challenging Kimball's reason for discharging him but, as we discuss below, each of the arguments is without merit. First, Krieg claims that Kimball was not undergoing a reduction in workforce. Unfortunately, Krieg failed to present any evidence (depositions or affidavits) to contradict the evidence that there was a reduction in force. Krieg merely claims that there was no "intentional downsizing by plan or scheme." Plaintiff's claim is incorrect for the defendant presented the affidavit of David Scheu stating that the furniture division's sales and profits were declining in late 1990 and early 1991. Thus, "management concluded that a reduction in force would be necessary. These reductions began in the spring of 1991 and continued through the fall of 1991. Approximately 35 employees in the Office Furniture Division were separated from the Company during this reduction in force." Scheu affidavit at p 5. Scheu also testified regarding the financial difficulties in the office furniture division in his deposition as did John Thyen, the Executive Vice President in charge of marketing. The district court found, and we agree that "Krieg has brought forward no evidence to establish that the office furniture division did not, in fact, experience a decline in revenues in late 1990 and early 1991 or that 35 employees were not, in fact, laid off in the division during that time." Mem. op. at 13.
 
 
 32
 Secondly, Krieg attempts to argue that there was not really a reduction in the number of credit managers. He claims that the traditional number of credit managers was four and that after Luke Oeding was hired (while Krieg was temporarily with the BAA team)[4] and Krieg was laid off in September 1991, that the number remained at four thus there was no reduction in the number of employees. What Krieg fails to acknowledge is that while he was working with the BAA team, he continued to work one day a week in the credit department and after completing his time with the BAA team he resumed full-time service as a credit manager. Thus, the credit department was employing five credit managers in 1990 and 1991 after Oeding was hired and prior to Krieg's discharge. Moreover, Scheu testified that the workload in the credit department warranted keeping five credit managers but in an effort to reduce costs the department would have to get by with only four credit managers. Given the fact that thirty-five other employees were terminated in the office furniture division, and the fact that Krieg has failed to introduce any evidence refuting Kimball's claim it was reducing the workforce, we believe that a reasonable juror could only find that Krieg was laid off as part of a reduction in workforce and not because of his age.
 
 
 33
 The plaintiff's third argument is that the letter of recommendation written by David Scheu, following Krieg's termination, contradicts the reasons given for the discharge and thus is evidence of pretext. We are unpersuaded by this argument for the recommendation letter, set forth in its entirety supra at 5, clearly explains that Krieg would not have been released but for the reduction in workforce necessitated by the economic downturn in the office furniture division. The recommendation letter is in complete harmony with Kimball's reasons for discharging Krieg: he was not terminated because he was a bad employee but because the firm was downsizing and someone had to be let go. This is the same situation that occurred in Gustovich where we held:
 
 
 34
 [The employer's] point was not that plaintiffs couldn't do their jobs, but that they were in the bottom sixth of a group of supervisors all of whom were performing at a level sufficient to satisfy the firm. Proof that plaintiffs were considered adequate employees before the budget cut therefore does not suggest that [the employer's] explanation masks age discrimination.
 
 
 35
 Gustovich, 972 F.2d at 848. The recommendation letter that David Scheu drafted, as a favor to an employee he had known for ten years, merely set forth that Krieg was a good employee and familiar with financial management. In no way does the recommendation letter serve as evidence that Kimball's stated reason for discharging Krieg was pretextual. The district court stated that
 
 
 36
 "[i]n viewing the letter as a whole, it is essentially consistent with the other evidence of record. Krieg was performing his duties in a satisfactory manner and would have remained a valuable employee with defendant in the absence of an economic downturn in the industry. The letter, while presenting Krieg in the best possible light for other employers, is not so inconsistent with the reason articulated by the defendant that it creates a genuine issue as to pretext."
 
 
 37
 We agree with the lower court's ruling and hold that the recommendation letter fails to establish pretext.
 
 
 38
 The plaintiff's next argument is that Kimball fired him because it would lead to savings in the company's pension plan. But, as the U.S. Supreme Court recently stated in Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1705 (1993), "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." The Court went on to hold that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." Id. This Circuit, in Anderson, reiterated that the ADEA is only intended to prevent employers from discriminating on the basis of age and does not prevent an employer from making employment decisions based on salary or pension concerns. Anderson, 13 F.3d at 1126 ("[c]onsequently, [the plaintiff] could not prove age discrimination even if he was fired simply because [the defendant] desired to reduce its salary costs by discharging him").
 
 
 39
 The plaintiff argues that Hazen Paper leaves the door open for an age discrimination claim when "an employer ... targets employees with a particular pension status on the assumption that these employees are likely to be older." Hazen Paper, 113 S.Ct. at 1707. The plaintiff's attempts to distinguish Hazen Paper are unavailing for he has failed to put forth any evidence that Kimball's reduction in workforce as directed at employees "with a particular pension status on the assumption that these employees [were] likely to be older." In fact, there is no evidence in the record concerning the pension status or age of the thirty-five employees who were laid off as a result of the reduction in workforce. Thus, we agree with the district court's finding that Hazen Paper bars Krieg's argument based on his pension status.
 
 
 40
 Next, the plaintiff argues that he was not given notice of his inadequate performance nor given an opportunity to correct the deficiencies in his performance. Krieg relies on Castleman v. Acme Boot Co., 959 F.2d 1417, 1422 (7th Cir.1992), which stated that "a jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decisionmaker's testimony." In Castleman, the court found inconsistencies in the testimony of the supervisor responsible for discharging the plaintiff and also discussed the fact that the supervisor never informed the plaintiff of his concerns about the plaintiff's performance.
 
 
 41
 The defendant responds, and we agree, that Castleman involved discharging an employee for poor performance as opposed to a reduction in the workforce. See Gustovich, 972 F.2d at 845. In the instant case, Kimball provided reasons for ranking the plaintiff last of the five credit managers (his poor communication with other employees, his failure to utilize the computer system, his delay in responding to customers, and his failure to collect overdue balances), but Kimball never claimed that these reasons were cause for terminating Krieg on the basis of poor performance. Krieg was released because his performance was rated the lowest of the five credit managers, were it not for the reduction in workforce, he would still be employed at Kimball. See Gustovich, 972 F.2d at 848 ("[p]roof that plaintiffs were considered adequate employees before the budget cut therefore does not suggest that [the employer's] explanation masks age discrimination"). The fact that Krieg was performing his job adequately and the criticisms of his work were relatively minor is not evidence of pretext in a reduction in workforce case.[5]
 
 
 42
 Finally, we reiterate that "[e]ven if we were to believe that [the employer] made an unwise or mistaken decision or that it exercised poor judgment, the ADEA does not interfere with any employer's good faith business decision." Smith v. General Scanning, Inc., 876 F.2d 1315, 1322 (7th Cir.1989). As we stated above, the focus of our inquiry is "not whether the ratings were right but whether the employer's description of its reasons were honest." Gustovich, 972 F.2d at 848. The plaintiff has failed to present any evidence that David Scheu or Helen Kendall fabricated their reasons for ranking him fifth among the five credit managers. Moreover, Krieg has failed to rebut the deposition testimony of his fellow credit managers that "he was the least productive employee in the credit department." Credit Manager Dean Baumeyer's Deposition at 93.
 
 IV. CONCLUSION
 
 43
 The plaintiff has failed to rebut the defendant's nonpretextual reason for discharging him, i.e., the downsizing of the firm due to its decreased profitability, thus the judgment of the district court is
 
 
 44
 AFFIRMED.
 
 
 
 *
 The Honorable James C. Hill, of the United States Court of Appeals for the Eleventh Circuit, is sitting by designation
 
 
 [1]
 Krieg continued to work one day a week in the credit department while he was assigned to the BAA team
 
 
 [2]
 As we discussed above, Luke Oeding replaced Charles Krieg when Krieg was temporarily on assignment with the BAA team. When Krieg returned to the credit department, he and Oeding continued to work as credit managers until Krieg was terminated in September of 1991. Kimball has not hired a credit manager to replace Krieg since his discharge
 
 
 [3]
 See also Weihaupt v. American Medical Ass'n, 874 F.2d 419, 430 (7th Cir.1989):
 "[The plaintiff] is left only with the fact that he was replaced by someone younger. However, the difference in age between [the plaintiff] and [the younger replacement], in and of itself, fails to raise an inference of age discrimination...."
 
 
 [4]
 Krieg also makes an argument that his assignment to the BAA team was part of the plan to terminate him because of his age. Given the fact that Krieg voluntarily accepted the BAA team assignment and there is no evidence that the BAA team was part of some pretext to discharge him, this argument is without merit
 
 
 [5]
 The plaintiff suggests that there were discrepancies in the deposition testimony of David Scheu and Helen Kendall. Our review of the record reveals no material inconsistencies. Thus, we agree with the district court which ruled "This Court cannot find sufficient inconsistencies in the testimony of Kendall, Scheu, Niehaus and Baumeyer to establish that a genuine issue of material fact has been created as to the reasons for Krieg's termination."