**Roberta JONES, Plaintiff,**

v.

**FIRST COMMERCIAL BANK, Defendant.**

**No. Civ. LR–C–97–132.**

United States District Court, E.D. Arkansas, Western Division.

July 14, 1998.

Johnson D. Ogles, Ogles Law Firm, Jacksonville, AR, for Plaintiff.

J. Bruce Cross, Cross, Gunter, Witherspoon & Galchus, P.C., Little Rock, AR, for Defendant.

*MEMORANDUM OPINION AND ORDER*

GEORGE HOWARD, JR., District Judge.

Plaintiff filed this Title VII action pro se on February 14, 1997, alleging that she was terminated on May 2, 1995, due to her race.

The EEOC charge filed on May 30, 1995, reflects she asserted discrimination based on race, color, sex and disability. She filed an amended complaint on April 7, 1997, alleging that she was terminated because of an injury and future medical problems. On June 2, 1997, her retained counsel entered his appearance.

On November 26th, defendant filed a motion for summary judgment supported by brief, exhibits and a separate statement of alleged undisputed facts. Plaintiff responded on December 17th by brief, exhibits, objections to defendant's statement and her own statement of alleged undisputed facts. Defendant filed a reply on December 24th.

## BACKGROUND

Plaintiff Roberta Jones ("Plaintiff" or "Roberta") was hired by Defendant First Commercial Corporation ("Defendant" or "First Commercial") on March 2, 1981, as a reader sorter operator in the data processing operation department. Effective March 25, 1982, she became computer service night shift clerk in the computer service department. Plaintiff transferred to a data control clerk position on September 1, 1982. Plaintiff became a data processing control supervisor on September 27, 1984. On February 18, 1992, Plaintiff's job title was changed to Computer Operator I.

During the first week of August 1994, Plaintiff suffered an injury she claims was work-related. Plaintiff worked for a couple days in August after the injury, then did not actually work for First Commercial again. Plaintiff had surgery on September 1, 1994, and remained off work, receiving short term disability benefits from First Commercial.[1]

Plaintiff was released by her surgeon to perform light duty work effective February 6, 1995. Plaintiff testified, during her deposition, that she immediately notified First Commercial. The following exchange between First Commercial's attorney and Plaintiff illustrates what Plaintiff did and encountered when she sought to return to work on a light duty basis as suggested by her surgeon:

Q. ... Do you recall when you were released for light-duty work?

A. No the exact date.

Q. But you remember being released?

A. Right.

Q. What did you do once you were released for light-duty work?

A. I called the bank to let them know.

Q. Do you know who you spoke with?

A. Jodie Knovicka [plaintiff's department manager].

Q. Tell me about your conversation with Jodie Knovicka.

A. She told me they didn't have anything that I could do with the time that it was released part time for me.

Q. And what was your response to her?

A. I didn't have a response. Because she didn't have anything for me. What was I suppose to say?

Q. Did she make any suggestions to you about getting a job or anything?

A. No. She made no suggestion as I know of.

Q. Did she talk to you about getting a full release?

A. Yes.

Q. Tell me what she said about getting a full release.

A. Before I can go back to work, I would need to get a full-time release from my doctor. Full statement first. Then call her back.[2]

---

1. Plaintiff filed for workers' compensation benefits, but First Commercial, in the language of the Commission's Opinion filed February 20, 1996, "... First Commercial Corporation, contended that claimant did not sustain an injury within the course and scope of her employment, thus entirely controverting the claim." However, the Commission found "Claimant sustained compensable injuries to the neck, arm and shoulder which have resulted in the need of medical treatment and rendered her temporarily totally disabled."

2. Plaintiff testified that it "took me some time" to obtain the full release from her surgeon that Jodie Knovicka had required. In addition, Jodie Knovicka made the following observation regarding the difficulty that Plaintiff encountered in seeking to comply with her request:

After Plaintiff's full release from March 24 to May 2, Plaintiff, pursuant to the instructions of Jodie Konvicka, plaintiff's department manager and First Commercial's employment specialist as well, applied for two positions. She applied for Customer Service Representative I position on March 24, 1995. LaRonna Montgomery, Branch Manger, interviewed Plaintiff, but another employee, Karen Carlley, was chosen for the position because of Karen Carllely's prior experience and could "fill the position with minimal effort." On April 14, 1995, Plaintiff applied for an Account Inquiry Clerk position. However, another First Commercial employee, Monty Riggin, was selected for the position by the customer service assistant manager because Monty Riggin was more qualified having extensive customer service experience and product knowledge.

Plaintiff's limitations include that she cannot lift more than ten pounds, cannot make the motion required to open jars, and cannot stand for more than four hours and cannot drive for more than eight hours at a time. Jones also has neck pain caused when she does extensive work with her hands or when she is in one position for too long.

First Commercial contends that Plaintiff cannot establish a prima facie case since she is not disabled within the meaning of ADA and she was not terminated under circumstances from which an inference of unlawful discrimination arises. Specifically, First Commercial argues that at most her alleged impairment has affected a few of her major life activities, not that she is substantially limited in the ability to work.

Plaintiff responds that she is disabled since her back condition, which precludes heavy work activity, substantially limits her in the major life activity of working by eliminating her ability to perform a class of jobs; that an inference of unlawful discrimination arises since her attempts to obtain different employment with First Commercial could be interpreted as her request to be accommodated because of her injury; that First Commercial contested her workers compensation claim at every step; there is no evidence First Commercial attempted to reasonably accommodate her work restrictions; and that Plaintiff was terminated immediately once the thirty day limitation allotted to Plaintiff by Jodie Knovicka, pursuant to an alleged policy of First Commercial, to qualify for any vacancy applied for, and was precluded by Jodie Knovicka from applying for vacancy a few days before the expiration of the thirty day limitation on the theory that Plaintiff could not complete the application process before the expiration of the thirty day limitation.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only where there are no genuine issues of material fact to be resolved, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Inasmuch as discrimination cases frequently rest upon inferences rather than direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant. See: *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). See also: *Anderson v. Liberty Lobby, Inc.*, 477

"... Because Jones [Plaintiff] had difficulty getting a copy of a release from her doctor, I assisted her by calling Dr. Scott Schesinger's office several times to get a release. On March 24, 1995, I received a letter dated March 13, 1995, from Dr. Schlesinger releasing Jones." In addition to sending First Commercial a copy of the March 13th release, Dr. Schesinger sent a copy to St. Paul Insurance. The release set forth in clear terms Plaintiff's condition, as reflected in the following:
"... Interestingly, Ms. Jones' MRI scan shows new bulging and protruding discs at the 3–4 and 5–6 level, one above and one below her previous surgery.... Unfortunately, this has developed in her. Both of these lesions are in the midline ... she does have some brisk brachioradialis and biceps jerks bilaterally particularly on the left.... She does seem to have radicular type pain her right arm much like before but going all the way into the hand.... 1 also told her we could do an EMG and nerve conduction test and she would like to wait on that as well.
... I am going to go ahead and release her from my care at this time. I will give her a 10% permanent partial disability rating. I did tell Roberta that there is certainly a chance that these discs protrusions which I believe are related to her initial accident and the *treatment thereof might some day need further treatment.*" (Emphasis added).

U.S. 242, 252–255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. . . ." However "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993) (stating that this standard is applied with added caution in employment discrimination cases, where intent and credibility are crucial issues).

## DISCUSSION

42 U.S.C. § 12112(a) of the Americans With Disabilities Act (ADA) provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. at § 12111(8). See also: *Wooten v. Farmland Foods*, 58 F.3d 382 (8th Cir.1995).

To succeed on her ADA claim, Plaintiff must first satisfy the requirement that she is an "individual with a disability." The ADA defines the phrase "disability" with respect to an individual as:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment." Id. at Section 12102(2).

This Court is persuaded that Plaintiff has demonstrated that First Commercial, through Jodie Knovicka—Plaintiff's department manager and First Commercial's employment specialist—perceived Plaintiff as having an impairment which substantially limited Plaintiff's ability to work in the area or field of Computer Operator I generally, thus creating a genuine issue of fact as to whether First Commercial considered Plaintiff to be unsuited for employment generally in the area of Computer Operator I at the time Plaintiff affirmatively took steps to return to work as well as at the time Plaintiff was terminated.

Plaintiff testified during her deposition that on February 6, 1995, she called the bank and spoke to Jodie Knovicka and advised Jodie Knovicka that Plaintiff's surgeon had released Plaintiff for light-duty work and that Plaintiff wanted to return to work. Plaintiff further testified that Jodie Knovicka advised Plaintiff "they didn't have anything that I could do with the time that it was released part time for me." Plaintiff further stated that Jodie Knovicka made no suggestions "about getting a job or anything," but Jodie Knovicka admonished Plaintiff to get a full release. Specifically, Plaintiff testified as follows:

"Q. Tell me what she said about getting a full release?

A. Before I can go back to work, I would need to get a full-time release from my doctor. Full statement first. Then call her back."

Significantly, Jodie Knovicka initially advised Plaintiff that First Commercial "didn't have anything that [Plaintiff] could do" when Plaintiff was released for light duty, but in the same breath, so to speak, Jodie Knovicka insisted on a full release and took affirmative steps personally and communicated with Plaintiff's surgeon's office "several times" to acquire the full release. A close review of the full release and Plaintiff's testimony about the difficulty she encountered in trying to obtain the full release demonstrate that Plaintiff's surgeon was somewhat reluctant to issue a full release. For example, in the March 13, 1995, communication that Plaintiff's surgeon sent Plaintiff's treating physician and to First Commercial states in part:

. . . Ms. Jones' MRI scan shows new bulging protruding discs at the 3–4 and 5–6 level. . . . Unfortunately, this has developed in her. . . . She does seem to have

radicular type pain her right arm much like before but going all the way into the hand....

Chuck, I am going to go ahead and release her from my care at this time. I will give her a 10% permanent partial disability rating. I did tell Roberta that there is certainly a chance that these discs protrusions which I believe are related to her initial accident and the treatment thereof might some day need further treatment.

Plaintiff received the full release after her department manager and First Commercial's employment specialist called Plaintiff' surgeon "several times." This Court is of the view that motive, intent and credibility are crucial issues in this proceedings.

First Commercial, as argued by Plaintiff, "contested ... at every step," Plaintiff's effort to obtain workers' compensation benefits contending that Plaintiff did not sustain an injury within the scope and course of her employment. In resisting Plaintiff's efforts to get workers' benefits, Ivory Brooks, First Commercial's Information Manager, "testified that Ms. Jones told him her shoulder and neck were hurting in the latter half of August 1994, but stated he could not remember the exact date of the incident when informed on cross-examination that Ms. Jones' last day of work was August 5th." (See: Arkansas Workers' Compensation Commission's Opinion dated February 29, 1996 and marked as Plaintiff's Exhibit B). In this Court's opinion, there is an inference that First Commercial, through the action of Jodie Knovicka, possessed an unsubstantiated fear that Plaintiff would suffer additional injuries if permitted to continue in the employment with First Commercial. Stated differently, as argued by Plaintiff, is First Commercial's alleged good faith attempt to assist Plaintiff in finding suitable accommodations by insisting on a full release simply a thinly veiled attempt to avoid any costs of accommodation or future liability resulting in the termination of plaintiff?

Plaintiff is not claiming that it was discrimination for her not to have been selected for either of the two positions applied for. Plaintiff did not apply for any other positions because First Commercial has a policy that precludes an employee from applying for more than one position at a time and until final disposition has been made of that application. Jodie Knovicka had informed Plaintiff once she was released, pursuant to policy, Plaintiff would have thirty days to find another position at First Commercial. Plaintiff was not permitted to apply for any other positions although she desired to do so. Plaintiff was advised that there was insufficient time remaining within the thirty day limitation for her to complete the process. On May 2, 1995, Plaintiff was terminated for her failure to secure a position within thirty days of her release to return to work. It seems apparent that Plaintiff was not actually afforded thirty days before her discharge to seek other positions.

Jodie Konvicka's conclusion that there is "nothing for you" when Plaintiff sought to return to light-duty work after being off for five months due to her injury creates a genuine question of fact whether First Commercial regarded Plaintiff as being significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various areas. In other words, Plaintiff was regarded as being substantially limited in working.[3]

This Court is of the view that motive, intent and credibility are crucial issues in this proceeding.

### Qualified Individual

In order for an "individual with a disability" to be entitled to the protection of the

---

**3.** EEOC's Technical Assistance Manual on Employment Provisions of the ADA, provides, in part, at Section II, 2.1(a)(iii):

... a person need not be totally unable to work in order to be considered substantially limited in working. The person must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes, compared to an average person with similar training, skills, and abilities.

Given the fact that the Court has found that a genuine issue of material fact exists as to whether Plaintiff was "regarded as having" an impairment that substantially limits major life activities, it is unnecessary to determine whether the evidence creates a genuine factual issue as to whether Plaintiff's impairment is substantial.

ADA, the individual must also show that he can perform the "essential functions" of his job "with or without reasonable accommodations." 42 U.S.C. § 12111(8). In deciding who is a "qualified" individual is a case-by-case process, depending on the circumstances of the particular employment situation.

It is undisputed that Plaintiff was employed by First Commercial for approximately fourteen years and had held the position of Computer Operator I, the job she was performing at the time of her injury, for approximately ten years; that at the time Plaintiff took the short-term disability leave, Plaintiff advised her department manager that she "had every intention of coming back to work." Upon receiving a release for light-duty work, Plaintiff immediately advised her manager, but the manager advised Plaintiff, in essence, that there is "nothing for you." The record is silent as to what action or consideration Plaintiff's Department Manager and First Commercial's Employment Specialist took in considering "reasonable accommodations" or conducted an individualized assessment before reaching the conclusion that there is "nothing for you" and further insisting that Plaintiff secure a full release from her surgeon. It is also plain that Plaintiff's Department Manager and First Commercial's Employment Specialist possessed first hand information regarding Plaintiff's injuries and needs, but the record is silent that the manager notified Plaintiff of First Commercial's obligation to provide accommodations for otherwise qualified individuals with disabilities. The ADA imposes a duty on an employer to post notices containing the provisions of the ADA, including the reasonable accommodation obligation in conspicuous places on its premises. See: EEOC Technical Assistance Manual On Employment Provisions of ADA, Section 3.6 which provides in relevant part:

> An ... employee does not have to specifically request a "reasonable accommodation," but must only let the employer know that some adjustment or change is needed to do a job because of the limitations caused by a disability.

To aid employers in deciding which employees may qualify for protection under ADA, EEOC has issued regulations that interpret each provision of the Act. See: 42 U.S.C. § 12111 (stating that not later than one year after the date of enactment of the Act, EEOC shall issue regulations in an accessible format).

Given the totality of the circumstances regarding Plaintiff's desire and attempt to return to work and First Commercial's mode and manner in responding to Plaintiff's wishes which ultimately resulted in Plaintiff being terminated, this Court is of the view that Plaintiff has created a genuine issue of act as to whether she could perform the "essential functions" of her job "with or without reasonable accommodation."

Accordingly, First Commercial's request for summary judgment on Plaintiff's ADA claim is denied.