Joseph L. RAND, Plaintiff–Appellant,

v.

CF INDUSTRIES, INCORPORATED, and Robert C. Liuzzi, Defendants–Appellees.

No. 94–1126.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1994.

Decided Dec. 23, 1994.

---

Joshua G. Vincent (argued), William J. Holloway, Robert H. Smeltzer, Hinshaw & Culbertson, Chicago, IL, for plaintiff-appellant.

Michael W. Coffield (argued), Frank E. Pasquesi, Gwen V. Carroll, Coffield, Ungaretti & Harris, Chicago, IL, for defendants-appellees.

Before WELLFORD,* MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

In late 1988, Richard C. Liuzzi, the president of CF Industries, hired Joseph L. Rand to serve as that corporation's Assistant General Counsel and Assistant Secretary. Rand, then age 47, began work in January, 1989. Less than two years later Liuzzi fired Rand, allegedly because certain executives and employees were dissatisfied with Rand's conduct. Rand filed suit against Liuzzi and CF Industries alleging, *inter alia*, age discrimination. At the close of discovery, the district court granted summary judgment for Liuzzi

and CF Industries. Rand appeals the summary judgment on his age discrimination claim. We affirm the district court.

## I. Facts

In the spring of 1988, Joseph L. Rand contacted Robert C. Liuzzi, President of CF Industries, Incorporated ("CFI"), to determine whether there was a position available at CFI.[1] Liuzzi expressed interest in Rand's application, and called Rand to arrange an interview. On June 17, 1988, Rand visited CFI where he was interviewed by Liuzzi and Clarence E. Lynn, the Vice President for Human Resources. Sometime during their meeting Liuzzi told Rand that for all practical purposes he was hired. Nonetheless, Liuzzi asked Rand to interview with other CFI executives. Rand subsequently interviewed with Paul R. Obert, CFI's General Counsel, and several other CFI executives.

Not surprisingly, the retirement plans of Obert, CFI's General Counsel, were discussed several times during the interview process. Liuzzi told Rand that when Obert retired Rand would become CFI's General Counsel. Liuzzi also said that Obert would probably stay at CFI for only a year or so, and that under no circumstances would Obert be allowed to stay after age 65, CFI's mandatory retirement age. But when Rand met with Obert for an interview over dinner, he got a different prognosis. Obert told Rand that he had an impending dispute with CFI over his retirement, and that CFI might try to force him to retire. According to Rand's notes, Obert said that he needed to stay on for another four to seven years for financial reasons, and that federal law prohibited CFI from forcing him out at age 65.

In any event, Liuzzi offered Rand a position as CFI's Assistant General Counsel and Assistant Secretary. Rand accepted the offer, and his acceptance was greeted with enthusiasm by CFI's executives—with one notable exception, Dick Roberg. Roberg's reaction is not surprising, because although he was CFI's current Assistant Counsel,

---

*Hon. Harry W. Wellford, Senior Circuit Judge of the Sixth Circuit, is sitting by designation.

1. Unless otherwise noted, all actions attributed to Liuzzi are also attributable to CFI, and vice versa.

Liuzzi had recently told him that he would never become General Counsel, and that he should begin looking for another job. According to Rand's notes, Obert told Rand he should expect a "less-than-warm welcome" from Roberg. Obert also told Rand that Roberg was a good lawyer, but had terrible interpersonal skills, and had alienated all but a few of CFI's officers. Obert predicted that Liuzzi would fire Roberg during the first quarter of 1989. As it happened, Roberg did not last that long. Liuzzi fired him shortly after Rand accepted CFI's offer in November of 1988.

Rand began work on January 4, 1989. In connection with his employment he was given an employee manual. The manual states that CFI is committed to a continuous appraisal policy whereby employee performance should be documented and communicated to CFI's employees on a regular basis. The manual also states that CFI employees are subject to at-will employment. The testimony of CFI executives indicates that, as a general matter, CFI adheres to its continuous appraisal policy.

Rand's first year at CFI went well, and this was reflected in his performance review. Obert rated Rand's performance as superior, gave him a $27,500 bonus and the maximum salary increase. In a section dealing with promotability, however, Obert stated that he did not plan to retire for another 5 years and 8 months.

As it happened, Rand had his first bad experience at CFI shortly after Obert prepared this 1990 review. The wrong turn of events occurred when Liuzzi asked Rand to draft a letter of intent concerning a possible purchase of assets. Liuzzi also asked Rand to oversee related tasks, including a search of records at the Securities and Exchange Commission which was supervised by Rosemary O'Brien. Rand angered both O'Brien and Liuzzi as a result of his work on this project. Later, O'Brien told Liuzzi that Rand had harassed her by repeatedly de-manding documents; had second-guessed her judgment as to the appropriate search methodology; and had embarrassed her during a telephone conference with retained counsel. Liuzzi became angry because Rand failed to provide revised drafts with sufficient dispatch and failed to provide red-lined copies. At one point Liuzzi warned Rand that unless he received a satisfactory document, there were going to be personnel changes.

Shortly after these negative exchanges, Obert met with Rand to discuss his review.[2] Obert told Rand that, practically speaking, he had received the highest grade, bonus, and raise possible. He also told Rand that CFI was very pleased with his performance. Rand must have expressed surprise about his bonus given Liuzzi's recent outburst, because he recorded Obert's thought that Liuzzi approved the bonus before the recent "fiasco."[3] During this meeting Obert restated his intent to defer retirement for another five and a half years. According to Rand, at this meeting Obert expressed much more forcefully than before his determination to stay on at CFI. Of course, this would delay Rand's promotion.

Rand's relationship with CFI deteriorated rapidly after January of 1990, and there can be no doubt that Obert's retirement plans played some part in this process. In June, for example, Rand asked Lynn to help him obtain a company car even though only the General Counsel received a company car under CFI's policy. According to Rand's notes, he told Lynn that this perquisite took on greater importance after Obert reiterated his intent to defer retirement for another five years. When Lynn reminded Rand that he knew Obert's retirement plans when he took the job, Rand replied that Obert's prolonged stay had seemed like a mere possibility then, but looked like a real probability now. Hence this second request, which Lynn again declined.

---

**2.** Obert prepared Rand's written review on or about January 4, 1990; the O'Brien incident took place on January 16, 1990; the Liuzzi incident took place on January 18, 1990; and according to Rand's notes, he met with Obert to discuss his performance review on January 25, 1990.

**3.** For his part, Liuzzi testified that he would not be inclined to sanction Rand on the basis of just this one incident.

Whatever the case, Obert stated that Rand became confrontational after his review, and Obert became dissatisfied as a result.[4] Rand's notes and other documents evidence this tension, which surfaced in the treatment of fairly petty matters. For example, Obert became angry because Rand reserved the days around Christmas for vacation without considering Obert's plans, and left work early or took days off from work for personal reasons. On several other occasions, Obert became angry because Rand took or authorized legal action without seeking Obert's approval. Rand was aware of this mounting tension, because when Obert sent him a pointed memo addressing his absence during working hours, Rand noted that Obert's response seemed unduly harsh, and seemed to intimate some more serious grievance.

Meanwhile, Rand's earlier difficulties with O'Brien came back to haunt him when, in March or April of 1990, Liuzzi, while complimenting the good teamwork and lack of back-biting among CFI executives, prompted O'Brien to complain about Rand. O'Brien's complaint spurred Liuzzi to begin an informal survey of other CFI executives. Sometime in June, Liuzzi questioned Lynn who told him that some people at CFI were finding Rand's personality intolerable. Lynn's comments prompted Liuzzi to ask for details, and to continue to seek out the opinion of other executives through the fall of 1990.

Ultimately several CFI executives told Liuzzi that they were not pleased with Rand. John H. Sultenfuss, CFI's Vice President for Marketing and Sales, told Lynn that he and people in his department were having a hard time working with Rand, thought Rand wasted their time, and, as a result, had stopped seeking Rand's advice. One member of Sultenfuss's department, Ray Poponyak, thought Rand was arrogant and insulting to both co-workers and clients, and stated that Rand had failed to provide him with legal advice. Later Liuzzi spoke with Sultenfuss and Harry Leonelli who reiterated these grievances.

By this time it was the fall of 1990, and Liuzzi called O'Brien again for the specific purpose of learning her opinion about Rand's conduct in general. During this conversation, O'Brien told Liuzzi that Rand had offended her again since they had last spoken. O'Brien related how Rand had humiliated and embarrassed her at several lunch meetings with clients, other industry representatives, or other CFI executives.

At this point, Liuzzi decided to fire Rand. There is no need to belabor the point: several CFI executives told Liuzzi that Rand was overbearing, tactless, and arrogant. As a result, they were unwilling to seek his counsel. According to Liuzzi the damage caused by Rand's conduct was irreparable, because he could neither order Rand to become less offensive, nor order other CFI executives to seek Rand's counsel. Significantly, Liuzzi never spoke directly with Obert, who was also displeased with Rand. When Obert returned to the office from a few days of sick leave, Liuzzi informed him that Rand would be fired, apologized for not consulting him in advance, and told him that the decision was final. Liuzzi then asked Obert to help Lynn design a severance package for Rand.

On December 7, 1990, Obert met with Rand to tell him he was fired. Obert told Rand that CFI had decided to terminate his employment because things were not working out. Rand was surprised and angered by CFI's decision. Rand's animosity persisted even though CFI gave him a severance package that included a $20,000 payment in lieu of the annual bonus Rand would have received for 1990.[5] Ultimately, Rand was replaced by John Scott, age 40, who assumed some but apparently not all of his duties.

Rand sued Liuzzi and CFI for breach of contract and age discrimination. With respect to his age discrimination claim, Rand

---

4. On appeal Rand has persistently emphasized that the district court erred when it relied on Obert's dissatisfaction with Rand, because Liuzzi did not consult Obert prior to making his decision. The district court did not err; it correctly treated Obert's dissatisfaction as important corroborative evidence.

5. For his part, Liuzzi thought that Rand received an overly generous severance package, but ultimately decided to approve the package recommended by Lynn and Obert.

argued that CFI's stated dissatisfaction with his job performance was unworthy of credence. In part, Rand relied on CFI's failure to document and communicate his performance problems as required by CFI's continuous appraisal policy in the face of his good performance review, raise, and bonus in January 1990. And after his termination he received a generous severance package from CFI. Rand also argued that Liuzzi's survey of CFI executives was a sham because he did not question Obert, his immediate superior, or George Shearon, the CFI executive whom Rand worked for 80% of the time and who was quite pleased with Rand's work. Finally, Rand denied that he had demeaned or embarrassed Rosemary O'Brien; denied that certain CFI executives had stopped seeking his counsel; and argued that CFI executives had given inconsistent reasons for his discharge. According to Rand, this circumstantial evidence showed that CFI's stated dissatisfaction with his performance was unworthy of credence, and therefore, a mere pretext for age discrimination.

By the end of discovery, the district court had granted summary judgment for Liuzzi and CFI on all claims. With respect to Rand's age discrimination claim, the district court found that he had failed to produce evidence from which a reasonable jury could find that CFI's stated reason for his discharge was unworthy of credence. Rand appeals the grant of summary judgment on his age discrimination claim, arguing that there are genuine issues of material fact that require a jury trial.

## II. Analysis

■ In *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035 (7th Cir.1993), we summarized the principles that guide our review of summary judgement on an age discrimination claim:

We review de novo a district court's grant of summary judgment, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a

matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict.

*Id.* at 1038 (citations omitted). Rand has presented his age discrimination claim in terms of this burden-shifting method first developed in Title VII cases, and later adapted to age discrimination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994) Under this process, Rand was required to establish a prima facie case of age discrimination. If Rand makes a prima facie showing the burden of persuasion remains with Rand, but CFI becomes obliged to produce legitimate reasons for its decision. If CFI produces legitimate reasons, then Rand must show that those reasons are a pretext for age discrimination or his claim fails. *Id.* at 1122–24.

■ In order to establish a prima facie case of age discrimination Rand was required to show that: (1) he fell within the protected class of persons (age 40 or over); (2) he was meeting his employer's legitimate expectations; (3) he was discharged or subject to some other adverse action by his employer; and (4) a younger person was treated more favorably. *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 153 (7th Cir. 1994); *Robinson v. PPG Industries Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994). Rand met this preliminary standard. He was age 49 when discharged; he produced some evidence that he was satisfying his employer's expectations; and his replacement was age 40. Rand's prima facie showing creates a presumption of discrimination that obligates CFI to produce a legitimate non-discriminatory reason for its decision. *Anderson*, 13 F.3d at 1122.

■ CFI satisfied its burden of production. CFI claims its decision was based not only on Liuzzi's determination that Rand had alienated several CFI executives who were unwilling or reluctant to seek his counsel, but also his conclusion that this damage was

irreparable. For these reasons, Liuzzi decided that Rand was unfit to serve as CFI's counsel. CFI's mere production of this legitimate non-discriminatory reason for its action rebuts the presumption of discrimination created by the prima facie showing. *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 522 (7th Cir.1994). *Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). This obliges Rand to show that CFI's stated reasons for its action are pretextual or his claim fails. *Sarsha,* 3 F.3d at 1039. A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Id.* Rand asserts that he has produced circumstantial evidence from which a reasonable jury could infer that CFI's stated reasons for his discharge are unworthy of credence.

First, Rand argues that CFI's stated reasons for his discharge are incredible because CFI never documented or communicated his performance problems despite its continuous appraisal policy. But Rand's reliance on CFI's policy is misplaced because it does not state or imply that CFI is *obliged* to communicate problems before it decides to discharge an employee. In this regard, there is no evidence that Roberg—Rand's equally unlucky predecessor—was given any warning before Liuzzi determined that he would be discharged. Like Rand, Roberg was fired because he had offended several CFI executives and, in CFI's judgment, he had poor interpersonal skills. Liuzzi's peremptory discharge of Roberg shows that CFI's continuous appraisal policy is not an ironclad promise that CFI will communicate its dissatisfaction before terminating an employee. At any rate, nothing in CFI's policy prohibits Liuzzi's action.

■ Moreover, Rand was not just any employee. He held the unique and no doubt sensitive position of in-house counsel for CFI. Because he is one of CFI's attorneys, Rand's age discrimination claim implicates "the clear right of a client to discharge his or her attorney for any reason, or for no reason." *Kier v. Commercial Union Ins. Companies,* 808 F.2d 1254, 1256–57 (7th Cir. 1987). An attorney's age discrimination claim against his employer requires careful scrutiny because "the relationship between attorney and client is based on trust and cannot function unless the client has complete confidence in his or her attorney." *Id.* at 1257. For the same reasons, it is difficult to document dissatisfaction with an attorney's performance. Thus, CFI's decision to fire one of its attorneys must be given special deference. *Id.*

Rand offers other objections to CFI's decision to fire him. He asserts that Liuzzi's "survey" of co-workers was nothing but a sham, because Liuzzi only questioned a small number of CFI executives.[6] He also argues that his fine performance review shows that CFI's complaints about his performance are unfounded, and he implies that CFI's gratuitous and generous severance package was supposed to buy off his age discrimination claim. He denies that CFI executives stopped seeking his counsel. He also denies that he ever insulted or offended O'Brien. He also asserts that CFI's executives have given inconsistent reasons for his discharge.

■ But most of these arguments are directed towards the wisdom of Liuzzi's actions, not the factual basis for his decision. Liuzzi did not survey Obert or Shearon, but if Liuzzi consults with only a few key people and concludes that Rand must be fired, that is enough. He is also entitled to the assumption that those people he did consult were telling the truth. Any pretext determination is concerned with "whether the employer honestly believes in the reasons it offers," not whether it made a bad decision. *Kralman,* 23 F.3d at 156–57; *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992) (issue of pretext addresses whether employer honestly believes in the reasons it offers for its action.) Likewise

---

6. Rand's argument that Liuzzi stretched his survey into the fall of 1990 because he could not find good reason to fire him is baseless. Apparently, Rand would consider it more appropriate if Liuzzi had fired him earlier in 1989, and with even less information. In any event, it is unremarkable that Liuzzi deferred his decision until the fall of 1990. Liuzzi claims his decision was prompted by the cumulative impact of the negative feedback he had received by the fall of 1990.

Rand's criticism of CFI's generous severance package proves nothing. In effect, he argues that his severance package was so good that CFI must have had an ulterior motive—to buy off his age discrimination claim. But Rand has produced no evidence showing that CFI sought to secure a release of his age discrimination claim in exchange for the severance package. "[T]here is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or bad business judgment." *Kralman,* 23 F.3d at 156; *McCoy,* 957 F.2d at 373. And we are not concerned with the correctness or desirability of CFI's stated reasons for its action. *Kralman,* 23 F.3d at 156. The court will not second-guess CFI's business decisions.

Rand also relies on the positive review of his performance as well as the raise and bonus he received in January of 1990 to show that CFI's criticism of his performance is unworthy of belief. But this case concerns Rand's performance as of December 7, 1990, the time of his discharge. See *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1262 (7th Cir.1993); *Karazanos v. Navistar International Transp. Corp.,* 948 F.2d 332, 336 (7th Cir.1991) (performance at the time of discharge is determinative). Rand had to show that CFI's claim that he was not performing well *at the time of his discharge* was a pretext. He was terminated in the fall of 1990 after a series of negative reports had accumulated during that year. Therefore, Rand's reliance on his January 1990 review and bonus for the previous year is misplaced.

Rand's assertion that Liuzzi and other CFI executives have given inconsistent reasons for his termination is meritless. Rand cites isolated portions of the record in an attempt to show inconsistency, but a review of the cited testimony reveals that—in substance if not word choice—there is total unanimity.

Liuzzi fired Rand because several CFI executives found Rand offensive, not because he was incompetent.

Ultimately, then, Rand's claim reduces to his assertion that Liuzzi, Obert, Leonelli, O'Brien, Sultenfuss, Poponyak, and Daigle are all lying to conceal CFI's intentional age discrimination. But Rand cannot avoid summary judgment merely by asserting that CFI's executives are lying. Rather, Rule 56 requires Rand to produce *specific facts* that cast doubt upon CFI's stated reasons for its action or raise significant issues of credibility. *Corrugated Paper Products v. Longview Fibre Co.,* 868 F.2d 908, 914, 918 (7th Cir.1989). Rand is required to make this showing because he is only entitled to the benefit of all *reasonable* or *justifiable* inferences when confronted with a motion for summary judgment. See *Cheek v. Western and Southern Life Insurance Co.,* 31 F.3d 497, 500 (7th Cir.1994); *Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1453 (7th Cir.1994).

In *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655 (7th Cir.1991), this court affirmed the grant of summary judgment despite affidavits alleging a discriminatory animus, precisely because those affidavits did not contain specific facts supporting their conclusory allegations. *Id.* at 659–660. Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and "[d]iscrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by affidavits speculating about the defendant's motives. There would be no summary judgments in age discrimination cases." *Id.* at 659 (citations omitted).[7] Even where an employee presents testimony purporting to show that an employer's stated reasons for its action are unworthy of credence, "The district court must still make a judgment as to whether the evidence, inter-

7. See also *Perfetti v. First Nat. Bank of Chicago,* 950 F.2d 449, 452 (7th Cir.1991), reversing a jury verdict based on a finding that the employer's stated reasons for its action were unworthy of credence due to an insufficiency of the evidence, and affirming that courts can make such credence determinations without invading the province of the jury; *Kier,* 808 F.2d at 1259, affirming the district court's j.n.o.v. and noting, "While credibility is a jury determination, we agree with the district court that to infer an age discriminatory discharge here is 'just too great a leap into speculation.'"

preted favorably to the plaintiff, could persuade a *reasonable* jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir.1989) (citations omitted, emphasis supplied).

Rand simply has not produced evidence from which a jury could *reasonably* infer that CFI's stated reasons for his discharge are unworthy of credence. His case rests almost exclusively on his uncorroborated assertion that no less than eight CFI executives are lying in an effort to hide CFI's age discrimination. Rand has failed to produce evidence which would render an inference of age discrimination reasonable in light of competing inferences. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).

Rand's failure of production highlights the inferences that remain. Anyone over 40 is in the class protected by the ADEA. Rand was age 47 when Liuzzi hired him and age 49 when Liuzzi fired him. Liuzzi made each decision in the space of only two years. Thus Rand was hired while in the protected class, and fired by the same person who hired him after a relatively short period of time. It seems rather suspect to claim that the company that hired him at age 47 "had suddenly developed an aversion to older people" two years later. *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992); *see also Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by an employer."); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993). In addition, Rand's replacement was only nine years younger, and this fairly marginal difference in age also weakens Rand's claim. *See Kralman,* 23 F.3d at 155–56; *LeBlanc,* 6 F.3d at 847. Rand had an obligation to produce specific facts that cast doubt upon CFI's stated reasons for its action or raised significant issues of credibility. Rand failed to produce such

facts, and therefore, the district court's grant of summary judgment was appropriate.

For the foregoing reasons, we AFFIRM.