106 F.3d 403
 72 Fair Empl.Prac.Cas. (BNA) 1279
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Diane TIPSWORD, Plaintiff-Appellant,
v.
OGILVY & MATHER, INCORPORATED, Defendant-Appellee.
 No. 96-1466.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 29, 1996.
Decided Jan. 6, 1997.
 
 Before CUMMINGS, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Following her termination, Diane Tipsword sued her former employer Ogilvy & Mather, Inc. ("Ogilvy") alleging age and sex discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Count I), and Title VII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 2000e et seq. (Count II), respectively. Tipsword also alleged an Illinois common-law claim for retaliatory discharge (Count III). The district court granted summary judgment in favor of Ogilvy on all three counts. For the following reasons, we affirm.
 
 I. BACKGROUND
 
 2
 Ogilvy is a New York advertising agency that maintains a Chicago office. Ms. Tipsword was hired by Ogilvy in 1977 at the age of 46. In 1989, at the age of 57, she was promoted to the position of senior vice president. At the time of her termination in December 1993, she held the title of director of finance and production services.
 
 
 3
 In mid-October 1993, Derek Carstens, who previously served as chairman and managing partner of Ogilvy's Sydney, Australia office, assumed the position of president of Ogilvy's Chicago office. After reviewing that office's financial position, Carstens determined that a reduction in operating costs was necessary. Toward this end, he considered a reorganization whereby certain positions, including those of senior level officers, would be eliminated and employees terminated. Carstens deemed such action necessary despite the fact that one month before his arrival in the Chicago office there had been a reduction in force for economic reasons resulting in the termination of nineteen employees. Accordingly, management reviewed the performance and responsibilities of the office's employees in an effort to determine which employees could be terminated with the least negative impact on operations.
 
 
 4
 Based on this analysis, a decision was made to terminate another nineteen employees including Ms. Tipsword.[1] In his affidavit supporting Ogilvy's motion for summary judgment, Carstens stated, "[t]his decision was made because management determined that virtually all of Tipsword's duties could be handled by two employees whom Tipsword supervised--Joan Peterson and Robert Donovan. In fact, prior to Tipsword's termination, these two employees were handling virtually all of these responsibilities that were supposedly to be performed by Tipsword." Carstens further stated that he "was aware of a mandate by senior management at [Ogilvy's] New York corporate office to reduce administrative and financial costs. This was to be accomplished by, among other things, determining which functions could be centralized at [Ogilvy's] corporate headquarters, thereby eliminating positions in local offices such as the Chicago office. Financial functions, such as Tipsword's were among those that would increasingly be performed in New York. Given that the majority of Tipsword's financial duties had been performed by other employees and those same financial duties would be moving to New York, it seemed logical to eliminate her position." Moreover, Tipsword was the highest paid employee in the accounting department and the two employees who were already performing many of Tipsword's duties were being paid "substantially less" than was she. Carstens met with Tipsword on December 6, 1993, and informed her that he was "retiring [her] from the company." Tipsword continued to work at Ogilvy until December 31, 1993, and was paid through January 15, 1994.
 
 
 5
 Tipsword filed a timely charge of discrimination with the EEOC and subsequently received a right-to-sue letter. Thereafter, she filed the instant action, alleging age and sex discrimination as well as retaliatory discharge. With respect to her retaliatory discharge claim, Tipsword alleges that she was terminated as the result of a December 1992 meeting she had with Bruce Jasurda, the managing director of the Chicago office, in which she challenged his proposed treatment of certain expenses. Tipsword maintains that Jasurda wanted to recognize these expenses as 1993 expenses--rather than accruing them as 1992 expenses--in order to maximize the officers' bonus pool. It was Tipsword's belief that the expenses should properly be recognized in 1992. As it turned out, Jasurda wound up leaving her a voice-mail message informing her that she should do the year-end accruals exactly as she wanted; and Tipsword testified during her deposition that she had "no objection" to how the 1992 expenses were ultimately accrued, stating, "They were done as they should have been done." Tipsword acknowledges that between the time of her December 1992 meeting with Jasurda and the time she received notice of her termination, she and Jasurda never again discussed the issue of accounting for 1992. Nevertheless, Tipsword believes that Jasurda harbored animosity toward her because he blamed her, in part, for the fact that his 1992 bonus was not as sizeable as he would have liked.
 
 
 6
 The district court granted Ogilvy's motion for summary judgment on all of Tipsword's claims, finding that she failed to raise a genuine issue of material fact as to whether Ogilvy's proffered reasons for terminating her (principally, cost reduction) were simply a pretext for discrimination. Having determined that there was no genuine issue of material fact as to pretext, the district court also rejected Tipsword's retaliatory discharge claim, finding that cost reduction rather than retaliation was the basis for Tipsword's termination.
 
 II. ANALYSIS
 
 7
 Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Tipsword and drawing all reasonable inferences in her favor. Rabinovitz v. Pena, 89 F.3d 482, 486 (7th Cir.1996); Gadsby v. Norwalk Furniture Corp., 71 F.3d 1324, 1327 (7th Cir.1995).
 
 
 8
 Lacking any direct evidence of age or sex discrimination, Tipsword has litigated her discrimination claims by relying on the indirect burden-shifting method of proving discrimination originally articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, and refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248. Under this familiar methodology, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff succeeds in her initial showing, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Thereafter, the plaintiff must prove that the employer's proffered reason is merely a pretext for discrimination. " 'A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.' " Rabinovitz, 89 F.3d at 487 (quoting Rand v. CF Indus., Inc., 42 F.3d 1139, 1145 (7th Cir.1994)). See generally Testerman v. EDS Technical Prods. Corp., 98 F.3d 297, 302-303 (7th Cir.1996); Helland v. South Bend Community School Corp., 93 F.3d 327, 329-330 (7th Cir.1996), petition for certiorari filed Nov. 13, 1996, 65 USLW 3381; Rabinovitz, 89 F.3d at 486-487. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.
 
 
 9
 For purposes of this appeal, Ogilvy concedes that Tipsword has made a sufficient prima facie showing of discrimination. And there is no dispute that Ogilvy has articulated legitimate nondiscriminatory justifications for Tipsword's termination--namely, reduction of labor costs by eliminating positions and consolidating tasks among the remaining employees; a mandate from corporate headquarters to reduce administrative costs in areas that could be centralized in the New York office; and, dissatisfaction with Tipsword's performance in the computer and MIS areas. Thus the determinative issue on appeal is whether Tipsword has succeeded in creating a genuine question of material fact as to whether these proffered justifications were pretext for discrimination.
 
 
 10
 At the outset, we note that there is no merit to Tipsword's contention that Carstens' expression that he was "retiring" her from the company reveals that her age was a factor in her termination. Not every word or phrase that is associated with age when uttered by an employer is ipso facto an expression of age-based animus; and, where, as here, the use of a word or expression at most reflects an awareness of an employee's age and fails to implicate age-based stereotyping in any way whatsoever we cannot find that it is probative evidence of discrimination. This Court has carefully reviewed the record in this case and can find no evidence that Carstens' use of the term "retiring" was anything but an innocuous attempt--perhaps ill-advised in this litigious era--to, in Tipsword's words, "dance[ ] around the subject" and avoid saying the relatively harsh sounding "You're fired."
 
 
 11
 The uncontroverted evidence in this case establishes that Ogilvy effected a reduction-in-force for economic reasons in December 1993. A total of nineteen persons, including Tipsword, were terminated in connection with this reduction.[2] Tipsword adduced no evidence calling into question Carstens' perception that the two employees who worked with Tipsword in the financial department (Donovan and Peterson) had already performed a majority of her financial duties at substantially lower salaries. It is also uncontroverted that after Tipsword was terminated the office's financial work was consolidated among the two remaining employees in that department, Donovan and Peterson. A desire to reduce operating costs by reducing salary or benefits expenses is a legitimate, nondiscriminatory justification for terminating employees so long as it is not simply a proxy for age. See EEOC v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir.1994) (noting that saving money is a lawful motive, even though salary and pension benefits tend to increase with age, making age and compensation highly correlated); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-1126 (7th Cir.1994) (finding that plaintiff "could not prove age discrimination even if he was fired simply because [defendant] desired to reduce its salary costs by discharging him"). The record is devoid of any evidence suggesting that Ogilvy's attempt to reduce operating expenses in this case was merely a pretext for discrimination. The most that Tipsword can point to as evidence of pretext in the record is that approximately one year after her termination, Donovan was given her prior title. This evidence, however, is largely beside the point, for the fact remains that after her termination there were two people doing the work that had previously been done by three and this reduction in personnel was accompanied by a reduction in total salary costs. Furthermore, an employer's business decisions taken a full year after a challenged termination sheds virtually no light on the employer's state of mind when implementing that termination. Thus the district court correctly determined that there was no genuine question of material fact as to the issue of pretext[3] and Ogilvy was entitled to summary judgment as to Tipsword's age and sex discrimination claims.
 
 
 12
 The foregoing analysis also defeats Tipsword's retaliatory discharge claim. As the district court correctly reasoned, one of the elements of such a claim is that the plaintiff's discharge was in retaliation for her activities. However, as the Illinois Supreme Court has observed, this element of causation "is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." Hartlein v. Illinois Power Co., 151 Ill.2d 142, 160, 601 N.E.2d 720, 728 (1992). As discussed above, Tipsword has failed to raise a triable issue as to whether Ogilvy's proffered justification is pretextual. Her speculation that her termination was the product of her disagreement with Jasurda, which took place approximately one year earlier, is simply that--sheer speculation. As such it is insufficient to raise a triable issue, see Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir.1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."); Andre v. Bendix Corp., 841 F.2d 172, 176 (7th Cir.1988) (noting that plaintiff's subjective belief as to the cause of her termination cannot be the basis of a finding of discrimination), certiorari denied, 488 U.S. 855, and, the district court properly granted summary judgment in favor of Ogilvy on this claim as well.
 
 
 13
 Affirmed.
 
 
 
 [1]
 Of the nineteen employees terminated as part of the December 1993 reduction in force, six (31.6%) were men and thirteen (68.4%) were women. This male-female ratio paralleled the composition of the Chicago office's personnel, which was 33.1% male and 66.9% female. Similarly, six (31.6%) of the terminated employees were over the age of 40 and thirteen (68.4%) were under 40; again, paralleling the composition of the office, which was 31.9% over 40 and 68.1% under 40
 
 
 [2]
 Tipsword argues that her termination was not a part of the December reduction in force based on the fact that the effective date of her termination was originally slated for March 1994 not December 1993. However, the fact that the original plans for Tipsword's termination provided for keeping her on-board an extra three extra months is simply not probative evidence that her termination was not part of Ogilvy's cost-reducing reduction-in-force
 
 
 [3]
 Having determined that Tipsword failed to raise a genuine issue as to pretext with respect to this proffered reason, we need not consider Ogilvy's other proffered reasons (namely, Tipsword's computer and MIS performance, and the belief that financial operations could be centralized in New York so that Tipsword's position was an appropriate one for elimination). An employee challenging her employer's nondiscriminatory justifications must show that all the reasons are pretextual in order to get to trial; the employer needs only one to succeed on summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir.1995) ("The fact that some of these reasons were successfully called into question [by plaintiff] does not defeat summary judgment if at least one reason ... stands unquestioned."); Wolf v. Buss (America) Inc., 77 F.3d 914, 920 (7th Cir.1995), certiorari denied, 117 S.Ct. 175. Nevertheless, we note that Tipsword has also failed to raise a genuine issue of material fact concerning whether Ogilvy's perception that financial operations could be centralized in New York--making her position appropriate for elimination--was pretextual. On this score, Tipsword offered the deposition testimony of Robert Donovan who testified that financial operations were not, in fact, moved to New York. However, the pertinent inquiry is not whether or not Carstens was correct when he stated that "[f]inancial functions, such as Tipsword's, were among those that would increasingly be performed in New York. Given that the majority of Tipsword's financial duties had been performed by other employees and those same financial duties would be moving to New York, it seemed logical to eliminate her position"; but rather, whether he genuinely believed this to be the case at the time he made the decision to eliminate Tipsword's position. Emmel v. Coca-Cola Bottling Co. Of Chicago, 95 F.3d 627, 633 (7th Cir.1996) ("The inquiry here is whether [defendant] honestly believed the reason it proffered."); Rand v. CF Indus., Inc., 42 F.3d 1139, 1145 (7th Cir.1995) ("Any pretext determination is concerned with 'whether the employer honestly believes in the reasons it offers,' not whether it made a bad decision."). Although Carstens apparently turned out to be incorrect in his assessment, Tipsword adduced no evidence calling into question the bona fides of Carstens' belief that her financial duties would be centralized in New York