Kirkland D. SMITH, Plaintiff–
Appellant,

v.

KENOSHA COUNTY, et al.,
Defendants–Appellees.

No. 00–3890.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 2001.

Decided Oct. 19, 2001.

Before Hon. FAIRCHILD, Hon. CUDAHY, Hon. COFFEY, Circuit Judges.

## ORDER

After the sheriff and the personnel director of Kenosha County, Wis., terminated Kirkland D. Smith's employment with the Kenosha County House of Corrections, Smith brought suit under 42 U.S.C. § 1983. Smith, who is African–American, alleged that the defendants conspired to detain and question him without probable cause and, thereafter, to terminate him on the basis of his race. The district court granted the defendants' motion for summary judgment on each of the counts in Smith's Amended Complaint. On appeal, Smith argues that he presented sufficient circumstantial evidence for a rational jury to find that he was discharged because of his race. We disagree, as we have found no such evidence. We affirm.

### I.

Smith applied for employment as a correctional officer at the Kenosha County House of Corrections in July 1998. A search committee invited Smith to an interview, and during the meeting he disclosed that he had been convicted of disorderly conduct and felonious sexual assault, but that the assault charge had been reduced to a misdemeanor. He also admitted that he had been arrested but not convicted for false imprisonment, larceny, possession of drugs, and unlawful use of a weapon. A Kenosha County district attorney recommended Smith's employment, and County Personnel Director Brooke P. Koons concurred with the recommendation.

Smith began working as a probationary correctional officer in late August 1998, and at the time Smith was hired, the Kenosha County's Sheriff's Department had no input into the personnel decisions of the house of corrections. However, the sheriff's department assumed control of the correctional facility on January 1, 1999, and Sheriff Larry T. Zarletti immediately made known his misgivings about Smith's fitness to serve as a prison guard. One reason for Zarletti's anxiety was his discovery that Smith had formerly worked at a U–Haul facility in the area, for informants had made the sheriff's department aware that the facility had a history of employing undesirables such as gang members and drug dealers. Thereafter, Zarletti met with his assistants and asked them to determine whether Smith may have been involved in such illegal activity. After conducting an investigation, Zarletti's assistants determined that Smith was reputed to be a former high-ranking gang member, who had been involved with narcotics trafficking on repeated occasions.

Based on this information, Zarletti asked Koons to terminate Smith. Koons originally declined to do so unless Zarletti acquired additional evidence, and so Zarletti ordered Lt. Richard A. Heyden and Lt. Harvey V. Hedden to conduct a more extensive investigation into Smith's background and criminal history. A woman named Lynda Kutzke told Hedden that Smith was a notorious cocaine dealer, who had sold drugs repeatedly between 1994 and late 1997. The lieutenants thereafter met with Smith and questioned him about his past. Smith denied that he was presently a gang member or cocaine dealer, but he did admit that he was a former member of the Vice Lords street gang and had sold cocaine many times during the 1990s. Hedden relayed this information to Zarletti, and Zarletti ordered Smith to turn in his badge. Zarletti met with

Koons and advised him of Smith's record. Smith was terminated February 19, 1999, pursuant to Zarletti's instructions.

## II.

On appeal, Smith argues that a rational jury could find that he was discharged because he is African–American. Because Smith has failed to present direct evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Initially, Smith is required to establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the defendants treated similarly-situated employees outside his class more favorably. *See Logan v. Kautex Textron N. Am.,* 259 F.3d 635, 639 (7th Cir.2001); *Foster v. Arthur Andersen, L.L.P.,* 168 F.3d 1029, 1035 (7th Cir.1999). The burden then shifts to the defendants to proffer a race-neutral reason for their decision. At this point, the inference of discrimination disappears, and the burden returns to Smith, who must create more than a "weak issue of fact" that each and every proffered reason is a pretextual cover for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Our focus at this juncture is on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148–49, 120 S.Ct. 2097.

## III.

First, we first turn to the fourth element of the prima facie case. Smith has not

shown that his position was subsequently filled by a non-minority applicant. Therefore, Smith must demonstrate that he was treated differently from a similarly-situated non-minority employee. Smith must identify someone whose misconduct was substantially the same as his own. Smith argues that he was treated differently than Edward Hartnell and Sonnie Kason. (Appellant's Br. at 25–26, 28–29; Appellant's Reply at 1–2.) We disagree.

Before identifying a similarly-situated employee, we must determine why the defendants terminated Smith. There is no genuine dispute that the defendants felt that a reputed drug dealer such as Smith, who had extensive ties to street gangs, could disrupt the correctional facility's atmosphere, regardless of whether the disruption could be traced to gang membership that was ongoing, recently lapsed, or wholly past. Koons testified that he shared his concerns with Zarletti that some inmates who recognized Smith might not respect his authority, given that they were "somewhat familiar with his background." (Tr. at 135.) Hedden also advised Zarletti that in his opinion it is extremely unlikely that a former high-ranking gang member could ever completely disentangle himself from the gang. Based upon this information, which validated his initial belief that persons connected to street gangs should not serve as prison guards, Zarletti again made it known that he opposed Smith's employment. (*Id.* at 156, 120 S.Ct. 2097.)

We reject Smith's argument that the defendants have offered shifting reasons for their decision. In support of his argument, Smith points to a letter written by Defendants' attorney to the Equal Rights Division of the State of Wisconsin Department of Workforce Development. Page one of this letter states that Smith was fired because of his "ongoing drug and gang affiliations," while page three of the letter states that Smith was subject to termination because of his "[p]ast and potentially current gang affiliation."[1] For the reasons stated earlier, we agree with the district court that these statements diverge merely in form, not substance.

■ Thus, in asking whether Zarletti treated any similarly-situated employee differently from Smith, our focus is on whether the employee allegedly had equally serious and repeated criminal activity in his or her immediate past, including but not limited to drug and gang affiliations of similar quality, quantity, and recency. Hartnell is not similarly-situated for numerous reasons. The primary reasons are that Hartnell was never involved with a street gang, never sold controlled substances, and never engaged in criminal conduct within the three years before the sheriff's department assumed control of the house of corrections. Department records show that Hartnell was arrested and paid a fine for battery in May 1995 and for violating liquor laws, disorderly conduct, and loitering in 1989. Other charges against him for assault and selling liquor to minors were dismissed or settled out of court in 1989 or 1990. (Doc. No. 30 Ex. Q.)

Although Smith contends that Hartnell was involved in street gangs, Smith sup-

---

1. Page one of the letter states, "Kenosha County terminated Mr. Smith's employment after it was discovered that he had ongoing drug and gang affiliations which directly conflicted with his duties as a Kenosha County Direct Supervision Officer." (Appellant's Br. App. 42 at 1.) Page three of the letter states that a sheriff's investigation resulted in the conclusion that Smith was subject to termination because of his "[p]ast and potentially current gang affiliation," (*Id.* 44 at 3), while page five states that Smith was fired because of his "unsuitability for the job, due to drug and gang affiliations." (*Id.* 46 at 5.)

ports this argument only by claiming that Hartnell told Smith that "when he was younger he was in a gang or something at one point." (Appellee's Supp.App. at 316.) Hartnell's statement is inadmissible hearsay that courts may not consider when ruling on a motion for summary judgment. *Pfeil v. Rogers,* 757 F.2d 850, 861 (7th Cir.1985). Even if we were to consider this evidence, we would still affirm the district court because Smith has not shown that Zarletti had information at his disposal concerning Hartnell's former gang membership. Without such knowledge, we cannot conclude that Zarletti treated Hartnell differently than Smith. *See Friedel v. City of Madison,* 832 F.2d 965, 974 (7th Cir.1987).

■ We now turn to Smith's claim that he was treated differently than Kason. This claim is somewhat puzzling, because, after all, Kason and Smith were both terminated. Smith's complaint appears to be that the county granted Kason two formal hearings before an administrative review board, during which she was represented by counsel, before she was discharged, but that Smith was terminated without any hearing. However, Smith has not substantiated his complaint with any evidence besides his subjective opinions, which are based on rumors about how Kenosha County handled Kason's termination. (Appellee's Supp.App. at 327–28.) Therefore, we hold that Smith has not proffered admissible evidence that he was treated differently from Kason. *See Friedel, supra.* Because Smith has not established a prima facie case of discrimination, summary judgment was warranted on this basis alone. *See Payne v. Milwaukee County,* 146 F.3d 430, 434 (7th Cir.1998).

Had Smith established a prima facie case, then, pursuant to *McDonnell Douglas,* the burden of production would have shifted to the defendants to justify their personnel decision with race-neutral reasons. Defendants could have met this burden by explaining that they fired Smith because of his ties to drugs and street gangs. There would have been a total lack of evidence supporting Smith's claim that these proffered reasons were merely pretexts for discrimination. We, like the district court, analyze this evidence below.

■ Sheriff Zarletti learned about Smith's drug and gang involvement from a number of sources, including informant Linda Kutzke, who stated that she bought cocaine from Smith on a number of occasions between 1994 and 1997. Smith argues that he has called into question Sheriff Zarletti's statements that he personally spoke with Kutzke about Smith's drug sales. (Appellant's Br. at 15 ¶ 76; 28.) Smith's argument misses the mark, however, for Smith concedes that Kutzke also spoke to Lt. Hedden and provided him with "information … that Mr. Smith had been involved in the delivery of cocaine since 1994." (*Id.* at 14 ¶ 69.) Hedden relayed this and other similar information to Zarletti, and Zarletti fired Smith based on a reasonable belief that such information was true. (Hedden's Dep. at 52–55.) To establish pretext, Smith would have had to offer evidence demonstrating that Zarletti did not truly believe Hedden's statements—not merely that Zarletti may not have met with Kutzke—for Zarletti proffered that he terminated Smith because of his belief that Smith had ties to drugs and gangs, not simply because he had a meeting with Kutzke, during which she divulged this fact. *See Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir. 1994). Moreover, although Smith has attacked Kutzke's credibility as a confidential informant, he has failed to demonstrate pretext, for even if we assume that Kutzke's testimony was riddled with inaccuracies, the substance of her statements

was independently confirmed by numerous law enforcement officers, not to mention Smith himself. Zarletti "is entitled to the assumption that those people he did consult were telling the truth." *Id.*

Finally, we return to our earlier discussion about defense counsel's one-time suggestion that the defendants objected to Smith's "ongoing" gang affiliation—as opposed to his recent gang affiliation. The most charitable inference to be drawn in Smith's favor is that the defendants "tossed this additional 'reason' into the pot merely to make [their] case for firing [Smith] more impressive," *Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir. 1995), rather than to cover up discriminatory conduct. We recognize that an employee may sometimes avoid summary judgment by showing that the employer has articulated non-discriminatory reasons in such an inconsistent manner that a jury could find that the employer is dissembling. *See Hasham v. California St. Bd. of Equalization,* 200 F.3d 1035, 1047 (7th Cir.2000); *Perfetti v. First Nat'l Bank of Chicago,* 950 F.2d 449, 456 (7th Cir.1991). For example, an employer might proffer a specific reason and then completely abandon or contradict that reason under suspicious circumstances. The jury could then reject the proffered reasons and infer discriminatory animus based on the strength of the prima facie case and the employer's lack of credibility. *See, e.g., Stalter v. Wal–Mart Stores, Inc.,* 195 F.3d 285 (7th Cir.1999); *Emmel v. Coca–Cola Bottling Co. of Chicago,* 95 F.3d 627 (7th Cir.1996). However, summary judgment is appropriate when the employer has proffered legitimate non-discriminatory reasons that are consistent "in substance if not word choice." *Rand,* 42 F.3d at 1146; *Williams v. Alabama Indus. Dev. Training,* 146 F.Supp.2d 1214, 1224 (M.D.Ala.2001) ("[e]mployment law is not a game of 'Gotcha!®' ")

In other words, if there are only "relatively minor differences among the labels attached to [the employee's] conduct," coupled with the existence of undisputed race-neutral reasons for the employer's decisions, then the evidence does not "rise to a level of inconsistency that permits an inference of discriminatory motive." *Little v. Cox's Supermarkets,* 71 F.3d 637, 643 (7th Cir.1995). In this case, there is simply no evidence from which a rational jury could infer that Kenosha County terminated Smith because of his race. From our review of the record, we are convinced that the court's grant of Defendants' Motion For Summary Judgment was proper. *See, e.g., Raybon v. Alabama Dep't of Pub. Safety,* 2001 U.S. Dist. LEXIS 7240, 2001 WL 611194 at *4 (M.D.Ala.2001) (finding that a state trooper who "consorts with felons ... is a menace to the public who, of course, may be lawfully terminated.")

### IV.

The judgment of the district court is AFFIRMED.