Heather J. AUSTIN, Plaintiff–Appellant,

v.

CATERPILLAR, INCORPORATED, Defendant–Appellee.

No. 02–3703.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 2003.

Decided June 16, 2003.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

## ORDER

Heather Austin was discharged by her employer, Caterpillar, Inc. After obtaining a right-to-sue letter from the EEOC, Ms. Austin filed a Title VII action in the district court. She alleged a hostile work environment and retaliatory discharge and also sought punitive damages. In response to Caterpillar's motion for summary judgment, Ms. Austin conceded that her hostile work environment claim was outside of the scope of the right-to-sue letter. The district court then granted summary judgment to Caterpillar on the retaliation claim and declined to address the punitive damages issue because it was moot.

For the reasons set forth in this order, we affirm the judgment of the district court.

# I
## BACKGROUND

### A. Facts

On August 14, 2000, Ms. Austin began work as a distribution technician at Caterpillar's Engine Center in Lafayette, Indiana. She was responsible for stocking parts to assigned areas of the assembly line and for ordering parts when necessary. Caterpillar emphasizes the significance of its employees' working as a team. For example, Ms. Austin's job duties required that she assist technicians in other areas when she had completed tasks that were her primary responsibility. Ms. Austin's immediate supervisor was Becky Edmond, the shift materials and distribution supervisor. Edmond did not have the authority to terminate subordinates. Harry Joyce, the general shift supervisor, had such authority.

On August 16, 2000, Ms. Austin overheard her coworker, Shawn Baker, making disparaging and offensive remarks about African Americans and biracial children. Ms. Austin, who is white, has a biracial child, and she kept a picture of her child on the forklift that she drove. She claims that Baker had seen this picture and that his hostile remarks offended her. Ms. Austin testified in her deposition that she immediately complained to her supervisor Becky Edmond and that Edmond's response was only to tell her to get along with her teammates. Edmond's deposition indicates that Ms. Austin did not lodge a complaint with her at that time. Immediately after Baker made his remarks, another team member and peer of Ms. Austin, Mavis Easterday, criticized Baker for his statement. Moreover, although Ms. Austin claims it was insincere, Baker apologized to Ms. Austin several days after he made the comment.

Approximately one month later, on September 15, 2000, Baker made a second

racially charged comment.[1] Easterday again admonished Baker for his insensitivity, and Ms. Austin immediately complained to Becky Edmond. Edmond testified that she spoke to Baker the same day and that Baker indicated he was quoting a media report rather than making the racially hostile remarks himself. Nevertheless, Edmond verbally admonished Baker to monitor his language more carefully. Ms. Austin testified that, when she asked Ms. Edmond about what steps she had taken to handle the complaint about Baker, Edmond told her she had done nothing. Both Edmond and Joyce testified that at some time Edmond relayed to Joyce that she had handled the situation by admonishing Baker not to use such language in the workplace.

Ms. Austin was a probationary employee at Caterpillar and therefore subject to termination at will. Ms. Austin's personnel file indicates a number of e-mails and voice messages from employees regarding Ms. Austin's overstocking or understocking the assembly line, which her co-workers commented could result in serious problems if the department was audited. Edmond also had received reports that Ms. Austin was not helping out in other areas when she finished supplying her stations. On September 17, 2000, Edmond gave Ms. Austin a performance report that included negative evaluations in areas including quality of work, dependability and teamwork.

Ms. Austin claims she raised the issue of Baker's remark with general supervisor Harry Joyce on September 21, 2000 because she believed that Edmond's actions were not a sufficient response to Baker's comments.[2] Ms. Austin also told Joyce that she felt like an outcast among her co-workers. Joyce investigated these concerns by speaking with four of Ms. Austin's teammates. In the course of these conversations, these individuals told Joyce that there were teamwork problems and personality conflicts with respect to Ms. Austin. Joyce testified that he and Edmond discussed Ms. Austin's performance and teamwork problems on three occasions. After his meeting with Ms. Austin on September 21, 2000, Joyce reviewed Edmond's written documentation of complaints regarding Ms. Austin. On September 25, 2000, after consulting with Edmond concerning Ms. Austin's negative performance report and reviewing Edmond's written documentation of problems concerning Ms. Austin, Joyce made the decision to discharge Ms. Austin—four days after she had complained to him.

## B. District Court Proceedings

After dismissing the hostile work environment claim, the court assumed without deciding that Ms. Austin had established a prima facie case of discrimination. *See* R.24 at 9. The court then noted that Caterpillar had presented legitimate reasons for terminating Ms. Austin and further determined that Ms. Austin could not meet her burden of proving that the reasons given by Caterpillar were pretextual. In reaching this conclusion, the court declined to

1. Becky Edmond's deposition testimony indicates that the statement and complaint occurred on September 13, 2000; Ms. Austin's deposition indicates it was "on or around" September 15, 2000. The exact date is not material to the resolution of this matter.

2. Joyce claims that, at their initial meeting on September 21, 2000, Ms. Austin did not mention the Baker incident, but met with him to express her disagreement with her performance report and her concern that she was an outcast. Joyce testified that Ms. Austin raised the concern about Baker's comments in a follow-up meeting at which Joyce relayed to Ms. Austin the results of his discussions with Ms. Austin's teammates.

consider Ms. Austin's only pretext evidence, the testimony of long-time employees Rick North and Dennis Mitchell. These individuals had stated that they had never heard of anyone being fired for stocking or teamwork problems. The district court noted that North and Mitchell were not supervisors and could only rely upon their limited non-management experience. *See id.* at 11–12 & 15–16.[3]

## II

## DISCUSSION

Ms. Austin submits that the district court erred in granting summary judgment in favor of Caterpillar on her retaliation claim; we review a district court's grant of summary judgment de novo. *See Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir.2002). Ms. Austin seeks to establish her case by relying on indirect evidence of discrimination. The burden-shifting regime of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), therefore governs our analysis. *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir.2003); *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir.2002).

To establish a prima facie case of discrimination in the retaliation context based on indirect evidence, the plaintiff must establish four elements. Ms. Austin must show that

(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly

situated employees who did not engage in statutorily protected activity.

*Haywood*, 323 F.3d at 531 (citations omitted). Assuming that Ms. Austin can establish a prima facie case, the burden then shifts to Caterpillar "to articulate some legitimate, nondiscriminatory reason" for discharging her. *McDonnell Douglas Corp.*, 411 U.S. at 802; *see Haywood*, 323 F.3d at 531. Ms. Austin must then establish that the proffered reason for her discharge is pretextual. *See Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002).

Our case law makes it clear that "[i]t is not always necessary to march through [the] entire *[McDonnell Douglas]* process if a single issue proves to be dispositive." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir.2002). This case presents such a situation. As our colleague in the district court noted, this case turns on the issue of whether Ms. Austin has been able to establish that Caterpillar's reasons for the discharge are pretextual. We therefore shall focus on this element of the case.

To meet her burden of proving pretext, Ms. Austin must "present sufficient evidence that the proffered reasons for the termination had no basis in fact, that they did not actually motivate [the employer's] decision, or that they were insufficient to motivate the decision." *Lesch*, 282 F.3d at 473. Caterpillar's Local Rule 56.1 statement included significant evidence supporting its proffered reason for termination that Ms. Austin did not meet performance criteria. *See* N.D. Ind. L.R. 56.1; R.19 at 5–11, ¶¶ 13–28. Edmond had received numerous reports of areas of the production line that were short on parts or overstocked due to Ms. Austin's failure to supply them properly, including

---

**3.** Because all the substantive claims had failed, the court dismissed the punitive damages claim. *See* R.24 at 16.

a comment that this situation could cause a major problem if an audit was conducted. *See* R.19 at 6–7, ¶¶ 16–18. Caterpillar also presented evidence of Ms. Austin's teamwork problems. In one instance, Ms. Austin was brought to tears as a result of a dispute with co-workers over an automobile accident in which she allegedly was involved on the job. *See id.* at 6, ¶ 15. Additionally, Ms. Austin herself complained on two occasions that she did not have a good relationship with co-workers.[4] *See id.* at 7–8, ¶¶ 21 & 23. There also was evidence that on numerous occasions Ms. Austin had failed to help other employees after she had completed her tasks. *See id.* at 7–9, ¶¶ 19 & 24. Indeed, on September 18, Edmond gave Ms. Austin her 30–day performance review, noting negative evaluations in the categories of quality, alertness, professionalism, dependability, stability and teamwork. *See id.* at 7, ¶ 20.

The issue at this stage of our inquiry is not whether Caterpillar's estimation of her performance was entirely correct, but whether its proffered explanation for the decision to discharge was a lie. *See Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994) (commenting that a pretext determination is concerned with "whether the employer honestly believes in the reasons it offers,' not whether it made a bad decision" (citations omitted)). Ms. Austin maintains that she did assist other employees; however, she presents no evidence of her performance other than her own testimony that she helped other employees. We have stated that generally, "An employee's self-serving statements about [her] ability ... are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th

Cir.1992); *see also Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 985 (7th Cir.1999) (quoting *Gustovich,* 972 F.2d at 848). On the other hand, circumstances may arise when the evidence of the employee's performance is so strong as to place into doubt the veracity of the employer's professed belief to the contrary. *See Roberts v. Separators, Inc.,* 172 F.3d 448, 453 (7th Cir.1999) (stating that evidence of a positive performance review and a sizable raise shortly before termination could show pretext when employer claimed individual had a "bad attitude" and was a problem employee); *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 19 (7th Cir.1987) (noting that an exceptionally good review two months before termination would be highly relevant in proving pretext), *overruled on other grounds by Coston v. Plitt Theatres, Inc.,* 860 F.2d 834, 836 (7th Cir.1988). This is not such a case of demonstrated excellent performance, for Ms. Austin's only review in her short tenure listed numerous deficiencies in the areas of teamwork and stocking. *See* R.20, Ex.3 (Austin performance report).

Our focus must be on the company official with the authority to effect the discharge, Joyce. The record reveals that, upon becoming aware of the Ms. Austin's complaint about the conduct of her co-worker, Baker, Joyce discussed the matter with Edmond. *See* R.19 at 9, ¶ 25. Edmond informed Joyce that she had responded to Ms. Austin's complaint by instructing Baker to watch his language. *See id.* At some point in September of 2000, before Ms. Austin's performance evaluation, Edmond and Joyce had a meeting at which Edmond explained Ms. Austin "was uncooperative with the other employees, [and] didn't get along with the other employees...." R.20, Ex.5 at 20. More-

---

**4.** The record as a whole does not support a suggestion that these teamwork problems were due in any way to her complaints about the racial remarks.

over, Joyce independently investigated the teamwork complaints with four co-workers of Ms. Austin. These inquiries resulted in reports of her poor relationship with teammates and her failure to assist people in other areas. *See* R.19 at 8–9, ¶ 24. Joyce also followed up on Ms. Austin's complaints of an unfair performance report by reviewing Edmond's personnel file listing complaints about Ms. Austin. *See* R.20, Ex.5 at 17–19. Finally, shortly before Joyce made the decision to terminate Ms. Austin, he and Edmond discussed Ms. Austin's negative performance report. *See* R.20, Ex.5 at 24–26; R.20, Ex.3 at 50–53.

Ms. Austin has failed to present the court with evidence calling into question the veracity of Joyce's testimony that he terminated her because of these legitimate performance concerns. She has failed to respond to Caterpillar's assertions in a manner that places into controversy whether Caterpillar's stated reason for the discharge is a fabrication. The deposition testimony of Caterpillar veterans Rick North and Dennis Mitchell simply is not sufficient to carry that burden. As we have noted earlier, both North and Mitchell stated that they had never seen someone fired for over or understocking and not getting along with team members. *See* R.20, Ex.7 at 3–4, 17; R.20, Ex.8 at 4–5, 12. However, both North and Mitchell admitted in their depositions that they are not supervisors. *See* R.20, Ex.7 at 18; R.20, Ex.8 at 13. Indeed, Mitchell explicitly admitted that he did not have any input in disciplinary decisions and that he did not receive reports identifying employees who were terminated. *See* R.20, Ex.8 at 13. Ms. Austin's anecdotal testimony of two non-management employees does not create an issue of material fact on the issue of pretext.

Because Ms. Austin cannot survive summary judgment on the issue of pretext, we do not have occasion to reach Ms. Austin's arguments concerning punitive damages.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED